# Exhibit 2

**UNITED STATES SENATE**
**COMMITTEE ON THE JUDICIARY**

**QUESTIONNAIRE FOR JUDICIAL NOMINEES**

**PUBLIC**

1. **Name**: State full name (including any former names used).

   Tilman Eugene Self, III
   Tripp Self

2. **Position**: State the position for which you have been nominated.

   United States District Judge for the Middle District of Georgia

3. **Address**: List your current office address. If city and state of residence differs from your place of employment, please list the city and state where you currently reside.

   Office:    Court of Appeals of Georgia
              40 Capitol Square, Southwest, Suite 408
              Atlanta, Georgia 30334

   Residence: Macon, Georgia

4. **Birthplace**: State your year and place of birth.

   1968; Macon, Georgia

5. **Education**: List in reverse chronological order each college, law school, or any other institution of higher education attended and indicate for each the dates of attendance, whether a degree was received, and the date each degree was received.

   1994 – 1997, University of Georgia School of Law; Juris Doctor (*cum laude*), 1997

   1986 – 1990, The Citadel, The Military College of South Carolina; Bachelor of Science (*magna cum laude*), 1990

   Summer 1985, Mercer University (two classes as a rising high school senior); no degree

6. **Employment Record**: List in reverse chronological order all governmental agencies, business or professional corporations, companies, firms, or other enterprises, partnerships, institutions or organizations, non-profit or otherwise, with which you have been affiliated with as an officer, director, partner, proprietor, or employee since

graduation from college, whether or not you received payment for your services. Include the name and address of the employer and job title or description.

January 2017 – present
Court of Appeals of Georgia
40 Capitol Square, Southwest, Suite 408
Atlanta, Georgia 30334
Judge

2007 – 2016
Superior Courts of Georgia, Macon Judicial Circuit
601 Mulberry Street, Suite 314
Macon, Georgia 31201
Chief Judge (2014 – 2016)
Judge (2007 – 2013)

Summer 1995; Summer 1996; 1997 – 2006
Sell & Melton, LLP
577 Mulberry Street, Suite 1400
Macon, Georgia 31201
Partner (2002 – 2006)
Associate Attorney (1997 – 2002)
Summer Associate (Summer 1995, Summer 1996)

Fall 1996
University of Georgia School of Law
225 Herty Drive
Athens, Georgia 30602
Research Assistant for Professor Ronald D. Carlson

1990 – 1994
United States Army
Fort Stewart, Georgia 31313 (1992 – 1994)
Republic of Korea (1991 – 1992)
Fort Sill, Oklahoma 73503 (1990 – 1991)
Field Artillery Officer

Summer 1990
Tilman Self & Associates, Inc.
108 Main Street
Byron, Georgia 31008
Laborer for my father's construction business

Other Affiliations: (uncompensated unless otherwise indicated):

2008 – present

2

Palazzo 1206, LLC
1133 Oakcliff Drive
Macon, Georgia 31211
Member (16.6% profit share)

2001 – 2012
Self & Sons Properties, LLC
6933 Zebulon Road
Macon, Georgia 31220
Managing Member (50% profit share)

2016 – 2017
Judicial Qualifications Commission
244 Washington Street, Southwest
Atlanta, Georgia 30334
Commissioner

2015 – 2016
Council of Superior Court Judges
18 Capitol Square, Southwest, Suite 104
Atlanta, Georgia 30334
President-Elect (2016)
Secretary/Treasurer (2015)

2012 – 2016
Southern Conference Football Officials Association
No physical address
President (2014 – 2016)
Vice President (2012 – 2014)

2009 – 2014
Museum of Aviation Foundation
1942 Heritage Boulevard
Robins Air Force Base, Georgia 31098
Member, Board of Directors

2009 – present
Boy Scouts of America
Central Georgia Council Advisory Board
4335 Confederate Way
Macon, Georgia 31217
Member, Advisory Board

2008 – 2011
Macon Bar Association
P.O. Box 123

3

Macon, Georgia 31202
President (2011)
President-Elect (2010)
Secretary (2009)
Treasurer (2008)

2006 – 2007
Georgia Sports Hall of Fame
301 Cherry Street
Macon, Georgia 31201
Vice President, Board of Directors

2004 – 2005
Greater Macon Chamber of Commerce
305 Coliseum Drive
Macon, Georgia 31217
Member, Board of Directors (2004 – 2005)
General Counsel (2004 – 2005)

2003 – 2013
Reformation Ministries, Inc.
458 Pierce Avenue
Macon, Georgia 31204
Vice Chair, Board of Directors

2002 – 2009
Macon Sports Hall of Fame
200 Coliseum Drive
Macon, Georgia 31201
Member, Board of Directors

2001 – 2006
Christian Counseling Services, Inc.
1415 Bass Road
Macon, Georgia 31210
Member, Board of Directors

2001 – 2003
Young Lawyers Division of the State Bar of Georgia
104 Marietta Street, Northwest
Atlanta, Georgia 30304
Member, Board of Directors

1998 – 2002
Bibb County Republican Party
2720 Riverside Drive

4

Macon, Georgia 31204
General Counsel

7. **Military Service and Draft Status**: Identify any service in the U.S. military, including dates of service, branch of service, rank or rate, serial number (if different from Social Security number) and type of discharge received, and whether you have registered for selective service.

After attending The Citadel on a four-year Army ROTC Scholarship, I had the privilege of serving as a Field Artillery Officer in the United States Army from October 1, 1990 to September 30, 1994. After being stationed at Fort Sill, Oklahoma, the Republic of Korea (including an assignment on the Korean Demilitarized Zone), and Fort Stewart, Georgia, I received an honorable discharge from the Army as a First Lieutenant. I registered for selective service.

8. **Honors and Awards**: List any scholarships, fellowships, honorary degrees, academic or professional honors, honorary society memberships, military awards, and other special recognition for outstanding service or achievement.

Officiated the NCAA Football Championship Subdivision (formerly I-AA) game between James Madison University and Youngstown State University (2017)

*Finalist* – Georgia Supreme Court (2012)

Selected to sit by designation on the Georgia Supreme Court for the case of *Melican v. Parker,* 711 S.E.2d 628 (Ga. 2011)

American Council on Germany – Young Leader (2008) (One of 25 selected to represent the United States at transatlantic conference)

Southwest Law Academy Liberty Bell Award recipient (2008)

Young Lawyer "On the Rise" (2007) (one of 15 selected throughout Georgia by *The Fulton County Daily Report*)

Leadership Georgia (2006) (Leadership program limited to 60 statewide participants)

Recognized by *Macon Magazine* as "Young Leader of the Year" (2005)

*Cum Laude* graduate, University of Georgia School of Law (1997)

Notes Editor, *Journal of Intellectual Property Law*, University of Georgia School of Law (1997)

Winner, American Society of Composers, Authors and Publishers writing contest, University of Georgia School of Law (1996)

I was nominated for the General Douglas MacArthur Leadership Award (outstanding company grade officer in the United States Army) (1993)

Army Commendation Medal, United States Army (1993, 1994)

Army Achievement Medal, United States Army (1992, 1994)

Overseas Service Ribbon, United States Army (1992)

National Service Medal, United States Army (1991)

Army Service Ribbon, United States Army (1990)

*Magna cum laude* graduate (9th in a class of 516), The Citadel (1990)

The Wall Street Journal Student Achievement Award (top business graduate), The Citadel (1990)

The Citadel Scholar Scholarship, The Citadel (1987 – 1990)

Four-year Army Reserve Officers' Training Corps Scholarship, The Citadel (1986 – 1990)

9. **Bar Associations**:  List all bar associations or legal or judicial-related committees, selection panels or conferences of which you are or have been a member, and give the titles and dates of any offices in which you have held in such groups.

American Bar Association (1998 – 2010)

Council of Superior Court Judges
President-Elect (2016)
Secretary/Treasurer (2015 – 2016)
Legislative Support Team (2008 – 2016)
Legislative Committee (2007 – 2016)
Co-Chair, Bench and Bar Committee (2008 – 2016)
Nominating Committee (2010, 2016)
Budget Committee (2011 – 2016)

Court of Appeals of Georgia
Planning, Facilities Management and Court Security Committee (2017 – present)
Court Rules Committee (2017 – present)
Disqualifications and Recusals Committee (2017 – present)

Criminal Justice Reform Council
Sentencing Subcommittee (2016 – 2017)

Judicial Council of the State of Georgia
    Member (2016)
    Domestic Violence Committee Member (2007 – 2017)

Judicial Qualifications Commission
    Commissioner (2016 – 2017)

Lawyers Foundation of Georgia (limited to 4% of Georgia bar)
    Sustaining Fellow (2010)
    Life Fellow (2008)

Macon Bar Association
    President (2010 – 2011)
    President-Elect (2009 – 2010)
    Secretary (2008 – 2009)
    Treasurer (2007 – 2008)
    Law Day Chair (2007)

State Bar of Georgia
    Co-Vice Chair, Bench and Bar Committee (2008 – 2016)

The William A. Bootle American Inn of Court (2004 – present)

Young Lawyers Division of State Bar of Georgia
    Board of Directors (2001 – 2003)
    Executive Council Member (1999 – 2001)
    Litigation Committee (1998)

10. **Bar and Court Admission**:

    a. List the date(s) you were admitted to the bar of any state and any lapses in membership. Please explain the reason for any lapse in membership.

      Georgia, 1997

      There has been no lapse in membership.

    b. List all courts in which you have been admitted to practice, including dates of admission and any lapses in membership. Please explain the reason for any lapse in membership. Give the same information for administrative bodies that require special admission to practice.

      United States Supreme Court, 2001
      United States Court of Appeals for the Eleventh Circuit, 1997
      United States District Court for the Middle District of Georgia, 1997
      United States District Court for the Northern District of Georgia, 1998

7

Georgia Supreme Court, 1997
Georgia Court of Appeals, 1997
Georgia Superior Courts (and all inferior courts), 1997

I allowed my membership in the United States Court of Appeals for the Eleventh Circuit to lapse in 2003 because I no longer had any cases before that court, and, pursuant to Georgia law, I have been precluded from practicing law since I became a judge in 2007. There have been no other lapses in membership.

11. **Memberships**:

a. List all professional, business, fraternal, scholarly, civic, charitable, or other organizations, other than those listed in response to Questions 9 or 10 to which you belong, or to which you have belonged, since graduation from law school. Provide dates of membership or participation, and indicate any office you held. Include clubs, working groups, advisory or editorial boards, panels, committees, conferences, or publications.

American Legion, Post 3 (1997 – present)

Association of Citadel Men (1990 – 1997)

Central Bank of Georgia (2006 – 2008)
    Member, Community Advisory Board

Central Georgia Council, Boy Scouts of America (2009 – present)
    Member, Advisory Board

Christian Counseling Services, Inc. (2001 – 2006)
    Member, Board of Directors

Citadel Alumni Association (1997 – present)

Council of Superior Court Judges (2007 – 2016)
    Budget Committee (2011 – 2016)
    Nominating Committee (2010, 2016)
    Legislative Support Team (2008 – 2016)
    Co-Chair, Bench and Bar Committee (2008 – 2016)
    Legislation Committee (2007 – 2016)

Downtown Macon Rotary Club (1999 – 2011, 2016 – present)
    Sergeant at Arms (2002 – 2003) (Service Above Self Award)
    Programs Chair (2000 – 2001) (Distinguished Service Citation)
    Paul Harris Fellow (2004, 2010, 2016)

Ducks Unlimited (2004 (estimated) – present)

Federalist Society (2008 – present)

Georgia Commission on Family Violence - Gubernatorial appointee (2010 – 2013)

Georgia Sports Hall of Fame Authority (2004 – 2007)
    Vice President, Board of Directors (2006 – 2007)

Greater Macon Chamber of Commerce (2004 – 2006)
    Member, Board of Directors (2004 – 2005)
    General Counsel (2004 – 2005)
    Vice Chair, Military Affairs Committee (2006)

Gridiron Secret Society (1997 – present)

Hinesville Officials Association (1993)

Lawyers Club of Atlanta (2017)

Leadership Georgia (2006)

Leadership Macon (1998)

Macon Rotary Club (2011 – 2016)

Macon Sports Hall of Fame (2002 – 2009)
    Member, Board of Directors

Macon Touchdown Club (2006 – 2009)

Mercer University Executive Forum Steering Committee (2004 – 2007)

Middle Georgia Football Officials Association (1997 – 2003)

Museum of Aviation Foundation, Inc. (2009 – 2014)
    Member, Board of Directors

National Association of Sports Officials (1993 – present)

National Wild Turkey Federation (2004 – present)

Northeast Georgia Officials Association (1994 – 1997)

Palazzo 1206, LLC (2008 – present)
    Member

9

Reformation Ministries, Inc. (2003 – 2013)
    Vice Chair, Board of Directors (2003 – 2013)

Self and Sons Properties, LLC (2001 – 2012)
    Managing Member

Shield Club (provides scholarships to children of slain public safety personnel)
(2008 – present)

Southern Conference Football Officials Association (2002 – present)
    President (2014 – 2016)
    Vice President (2012 – 2014)

b.  The American Bar Association's Commentary to its Code of Judicial Conduct
    states that it is inappropriate for a judge to hold membership in any organization
    that invidiously discriminates on the basis of race, sex, or religion, or national
    origin.  Indicate whether any of these organizations listed in response to 11a
    above currently discriminate or formerly discriminated on the basis of race, sex,
    religion or national origin either through formal membership requirements or the
    practical implementation of membership policies.  If so, describe any action you
    have taken to change these policies and practices.

    Prior to 1994, The Citadel was an all-male institution.  Consequently, it could
    only have male alumni.  In 1990, my parents purchased me a life membership in
    The Citadel's alumni organization, The Association of Citadel Men.  After The
    Citadel began to admit women, the name was changed to Citadel Alumni
    Association.  The Gridiron Secret Society is a student-run fraternal organization
    at the University of Georgia.  There is a corresponding organization for women.
    It is also my understanding that Rotary International previously restricted its
    membership to men.  To the best of my knowledge, none of the other
    organizations listed above discriminates or formerly discriminated on the basis of
    race, sex, religion or national origin, either through formal membership
    requirements or the practical implementation of membership policies.

12. **Published Writings and Public Statements**:

a.  List the titles, publishers, and dates of books, articles, reports, letters to the
    editor, editorial pieces, or other published material you have written or edited,
    including material published only on the Internet.  Supply four (4) copies of all
    published material to the Committee.

    Letter to the Editor, *Blackwell Will Make a Difference on Supreme Court*, The
    Fulton Daily Report, June 27, 2012.  Copy supplied.

10

Letter to the Editor, *Setting the Right Example*, The Macon Telegraph, September 26, 2010. Copy supplied.

Letter to the Editor, *Humble Sweet Man*, The Macon Telegraph, August 21, 2007. Copy supplied.

Letter to the Editor, *A Long Campaign Is Finally Over*, The Macon Telegraph, December 9, 2006. Copy supplied.

In 2006, I maintained a website for my judicial campaign: www.selfforsuperiorcourt.com. I did not maintain a copy of this website, and I did not have a website for my subsequent judicial campaigns. During my 2006 judicial campaign, I also purchased TV commercials, of which I was able to locate six videos of the ads. Video/audio supplied. I purchased at least one full-page ad in the Macon Telegraph, but I do not have a copy of the ad. The address of the Macon Telegraph is The Telegraph, 487 Cherry Street, Macon, Georgia 31201. I also produced radio spots and sent direct mail pieces, but I was only able to locate one fundraiser invitation and one campaign fundraiser envelope. Copies supplied. I also have a personal Twitter feed at @TrippSelf.

Letter to the Editor, *Trivial Politics*, The Macon Telegraph, April 21, 2005. Copy supplied.

Letter to the Editor, *Lucas Owes Ward Five an Apology*, The Macon Telegraph, July, 23, 2003. Copy supplied.

Letter to the Editor, *Missing a Faithful Friend*, The Macon Telegraph, February 13, 2001. Copy supplied.

Note, *The Vicarious Liability of Trade Show Organizers for the Copyright Infringements of Exhibitors*, 5 Tex. Intell. Prop. L.J. 81 (1996). Copy supplied.

b. Supply four (4) copies of any reports, memoranda or policy statements you prepared or contributed in the preparation of on behalf of any bar association, committee, conference, or organization of which you were or are a member. If you do not have a copy of a report, memorandum or policy statement, give the name and address of the organization that issued it, the date of the document, and a summary of its subject matter.

In the fall of 2016 and early 2017, I served on the Sentencing Subcommittee of the Council on Criminal Justice Reform. This subcommittee and the Probation Subcommittee met with various experts and ultimately made five recommendations to the full Council. The Council adopted the recommendations in its 2017 final report (pages 27-31). Copy supplied. The Council's Recommendations 2a, 2b, 4a, and 5a were included in Georgia Senate Bill 174 and eventually became law. The Georgia Department of Community

11

Supervision and the Georgia Department of Corrections adopted several other recommendations made by the Council in the final report.

In 2016, I was a member of the Judicial Council of the State of Georgia. The council frequently took a position of support on various bills introduced in the Georgia General Assembly. Materials from the general sessions of the Council for February 24, 2017 and December 9, October 28, August 31, April 29, and February 26, 2016 are supplied. The council also issued an annual report in 2016. Copy supplied.

From 2010 through 2013, I served on the Georgia Commission on Family Violence. The commission produced an annual report that was submitted to the General Assembly. I was able to locate the commission's 2011 and 2013 annual reports. Copies supplied.

c. Supply four (4) copies of any testimony, official statements or other communications relating, in whole or in part, to matters of public policy or legal interpretation, that you have issued or provided or that others presented on your behalf to public bodies or public officials.

In the fall of 2016, the Mayor of Macon-Bibb County asked me to appear before the Macon-Bibb County Commission work session to brief the Commission on an order entered by the Bibb County Superior Court some nine years earlier requiring the County to provide a safe, secure and adequate courthouse. I have no notes, transcript or recording.

On March 5, 2015, I appeared before the Georgia Senate Judiciary (non-civil) Committee to provide testimony in support of SB 99 on behalf of the Council of Superior Court Judges. Senator John F. Kennedy filed this bill in response to a call by Justice David Nahmias of the Georgia Supreme Court for the Georgia General Assembly to repeal a portion of O.C.G.A. § 17-8-57 in his dissenting opinion in *Rouse v. State*, 765 S.E.2d 879 (Ga. 2014). Senator Kennedy asked that I appear before his committee and provide my thoughts as to the practical problems and issues with the current version of the statute and the proposed legislative solution. I did so. The rules of the Georgia Senate in effect at that time did not provide for any recording of the committee hearing. I have no notes, transcript or recording.

In March 2014, the Mayor of Macon-Bibb County asked me to appear before a work session of the County Commission to brief the new commissioners on the jurisdiction and programs of the Bibb County Superior Court. The voters had recently voted to have a consolidated government of the City of Macon and Bibb County and several of the new commissioners had never worked with independent constitutional officers. I have no notes, transcript or recording.

12

On December 31, 2013, I attended the inaugural meeting of the Macon-Bibb County Commission in order to swear in the Mayor and County Commissioners into their respective offices. Video is available at http://www.ustream.tv/recorded/42508694.

On August 24, 2011, I testified before the Georgia House Judiciary Committee regarding House Bill 100, which would have created a new tax court. I appeared on behalf of the Council of Superior Court Judges to express the Council's concerns over a bill that would have created a "court" not included in the six classes of court expressly provided for in the Georgia Constitution. The Committee ultimately amended the bill to create the Georgia Tax Tribunal. I have no notes, transcript or recording, but press coverage is supplied.

d.  Supply four (4) copies, transcripts or recordings of all speeches or talks delivered by you, including commencement speeches, remarks, lectures, panel discussions, conferences, political speeches, and question-and-answer sessions. Include the date and place where they were delivered, and readily available press reports about the speech or talk. If you do not have a copy of the speech or a transcript or recording of your remarks, give the name and address of the group before whom the speech was given, the date of the speech, and a summary of its subject matter. If you did not speak from a prepared text, furnish a copy of any outline or notes from which you spoke.

June 27, 2017: Panelist, "Lunch with Georgia's Newest Appellate Jurists," Appellate Practice Section of the State Bar of Georgia, Atlanta, Georgia. The panel was on practical tips for appellate practitioners. I have no notes, transcript or recording. The address for the Appellate Practice Section is 104 Marietta Street, Northwest, Suite 400, Atlanta, Georgia 30303.

May 10, 2017: Speaker, award ceremony, Athens-Clarke County DUI court, Athens, Georgia. I discussed my experiences with accountability courts and congratulated the court on its recognition as one of four Academy Courts named by the National Center for DWI Courts]. Video link supplied: https://www.youtube.com/watch?v=6LK0QsUUpRM.

May 9, 2017: Speaker, monthly meeting, Bootle Inn of Court, Macon, Georgia. I spoke about my legal education and my path to the Court of Appeals. I have no notes, transcript or recording. The Bootle Inn of Court has no physical address, but it can be reached through its President, Ivy North Cadle, 300 Mulberry Street, Suite 200, Macon, Georgia 31201.

April 19, 2017: Speaker, Annual Meeting, Council of Probate Judges, Macon, Georgia. I spoke on general topics about the probate courts and their integral role, as well as the upcoming changes to the Judicial Qualifications Committee. I was also asked to swear in the council's incoming officers. I have no notes,

transcript or recording. The address for the Council of Probate Judges is 244 Washington Street, Southwest, Suite 300, Atlanta, Georgia 30334.

February 17, 2017: Panelist, Gwinnett County General Practice Continuing Legal Education Seminar, Gwinnett County Bar Association, Duluth, Georgia. The panel was on the internal operations of the court and practical tips for appellate practitioners. I have no notes, transcript or recording. The mailing address for the Gwinnett County Bar Association is Post Office Box 576, Lawrenceville, Georgia 30046. I did not find a physical address.

February 7, 2017: Panelist, "Pet Peeves from the Bench (and How to Avoid Them)," Atlanta Bar Association, Atlanta, Georgia. Video supplied.

February 3, 2017: Interviewee, Professionalism Class, Mercer University School of Law, Macon, Georgia. Video link supplied: https://www.youtube.com/watch?v=8cBdsKki2yE.

December 19, 2016: Speaker, swearing-in ceremony, Georgia Court of Appeals, Atlanta, Georgia. Remarks supplied.

September 16, 2016: Speaker, Portrait Unveiling of Judge William J. Self, II, Macon-Bibb County Court, Macon, Georgia. Notes supplied.

September 2016: Speaker, monthly meeting, Macon Bar Association, Macon, Georgia. I spoke about the current status of the Georgia Judicial Qualifications Commission and potential changes to the commission. I have no notes, transcript or recording. The Macon Bar Association does not have a physical address. The mailing address for the Macon Bar Association is Post Office Box 123, Macon, Georgia 31201.

August 19, 2016: Panelist, "Nuts and Bolts of Family Law," Institute of Continuing Legal Education, Savannah, Georgia. The panel was on current themes in family law and practice tips. I have no notes, transcript or recording. The address for the Institute of Continuing Legal Education is Tangela King, Director, 248 Prince Avenue, Athens, Georgia 30601.

July 26, 2016: Panelist, "Current Techniques in Handling Pro Se Litigants," Annual Meeting, Council of Superior Court Judges, Saint Simons Island, Georgia. The panel was on techniques for handling pro se litigants. I have no notes, transcript or recording. The address for the Executive Director of the Institute of Continuing Judicial Education is Douglas Ashworth, 1150 South Milledge Avenue, Athens, Georgia 30602.

June 16, 2016: Panelist, "War Stories XVI, Plus Georgia Evidence Update," Annual Meeting of the State Bar of Georgia, Institute of Continuing Legal Education, Amelia Island, Florida. The address for the Institute of Continuing

14

Legal Education is Tangela King, Director, 248 Prince Avenue, Athens, Georgia 30601.

May 19, 2016:  Panelist, Family Law Institute, Institute of Continuing Legal Education, Jekyll Island, Georgia.  The panel of judges was provided various hypotheticals, and each judge gave his or reasoning for the decision.  I have no notes, transcript or recording.  The address for the Institute of Continuing Legal Education is Tangela King, Director, 248 Prince Avenue, Athens, Georgia 30601.

May 21, 2015:  Panelist, Family Law Institute, Institute of Continuing Legal Education, Amelia Island, Florida.  The panel of judges was provided various hypotheticals, and each judge gave his or reasoning for the decision.  I have no notes, transcript or recording.  The address for the Institute of Continuing Legal Education is Tangela King, Director, 248 Prince Avenue, Athens, Georgia 30601.

December 5, 2014:  Speaker, "Ethics and Professionalism," Georgia Department of Transportation Special Assistant Attorney General Workshop, Georgia Department of Transportation, Forsyth, Georgia.  Chief Judge Stephen Dillard and I provided practical tips to avoid ethical and professional pitfalls in trials.  I have no notes, transcript or recording.  The address for the Georgia Public Safety Training Center is 1000 Indian Springs Drive, Forsyth, Georgia, 31029.

November 7, 2014:  Speaker, "Carlson on Evidence," Institute of Continuing Legal Education, Macon, Georgia.  I spoke about current topics involved in the new evidence code that Georgia adopted that became effective in January 2014.  I have no notes, transcript or recording.  The address for the Institute of Continuing Legal Education is Tangela King, Director, 248 Prince Avenue, Athens, Georgia 30601.

December 31, 2013:  Speaker, swearing-in ceremony for the Mayor and county commissioners of the newly consolidated Macon-Bibb County government, Macon, Georgia.  Before I swore in the officials, I made some general remarks regarding the new government and encouraged them to work together for the general good of the community.  Video link provided: http://www.ustream.tv/recorded/42508694.  My remarks were also partially reported in *Merged Government Takes Effect in Macon-Bibb County*, The Albany Herald, January 1, 2014.  The address for Macon-Bibb County government is 700 Poplar Street, Macon, Georgia 31201.  Article supplied.

December 11, 2013:  Speaker, "Judging in Court and On Field," Speakers Lunch Series, Georgia Defense Lawyers Association, Atlanta, Georgia.  Over the last 10 years, I have spoken to several groups about the mechanics of college football officiating, as I did at this event.  I do not know the dates of these other presentations.  I have no notes, transcript or recording.  The mailing address for

15

Jennifer Davis, the Executive Director of the Georgia Defense Lawyers Association, is Post Office Box 191074, Atlanta, Georgia 31119-1074. I could not find a physical address.

May 23, 2013: Panelist, Family Law Institute, Institute of Continuing Legal Education, Amelia Island, Florida. The panel of judges was provided various hypotheticals, and each judge gave his or reasoning for the decision. I have no notes, transcript or recording. The address for the Institute of Continuing Legal Education is Tangela King, Director, 248 Prince Avenue, Athens, Georgia 30601.

May 10, 2013: Speaker, Trial Academy, South Carolina Defense Trial Attorneys Association, Columbia, South Carolina. I spoke on effective tips in deposing witnesses and trial presentation. The address for the South Carolina Defense Trial Attorneys Association is 1 Windsor Cove, Suite 305, Columbia, South Carolina 29223.

May 31, 2012: Panelist, "War Stories XIII, Plus Georgia Evidence Update," Annual Meeting of the State Bar of Georgia, Institute of Continuing Legal Education, Savannah, Georgia. The panel discussed unique experiences that occurred in court or practice. The address for the Institute of Continuing Legal Education is Tangela King, Director, 248 Prince Avenue, Athens, Georgia 30601.

February 2012: Speaker, swearing-in ceremony for Judge Philip T. Raymond III, Georgia Superior Court, Atlanta, Georgia. I introduced Judge Raymond and welcomed him to the superior court bench. I have no notes, transcript or recording. The address for Judge Raymond is 601 Mulberry Street, Suite 314, Macon, Georgia 31201.

November 2010: Speaker, swearing-in ceremony of Judge Stephen Dillard, Georgia Court of Appeals, Atlanta, Georgia. Notes and remarks supplied.

2010: Speaker, commencement ceremony, Day Reporting Center, Georgia Department of Corrections, Macon, Georgia. I spoke at the commencement ceremony for the Day Reporting Center, which is a drug rehabilitation program run by the Georgia Department of Corrections. I have no notes, transcript or recording. The address for the Georgia Department of Community Supervision is 2 Martin Luther King, Jr. Drive, Southeast, East Tower, Suite 458, Atlanta, Georgia 30334.

March 2008: Speaker, Leadership Academy, Leadership Development Program, State Bar of Georgia, Macon, Georgia. I joined Judge Lamar Sizemore and spoke about professionalism among lawyers. The address for the State Bar of Georgia is 104 Marietta Street, Northwest, Atlanta, Georgia 30334.

16

January 2, 2007:  Speaker, swearing-in ceremony, Georgia Superior Court, Macon, Georgia.  Copy supplied.

October 23, 2006:  Speaker, political forum, Fort Valley, Georgia.  By looking through archives of newspapers, I found an article about a political forum I participated in that was held in Peach County, Georgia on this day, Ayanna McPhail, *Candidates Make Their Pitch at Peach Forum*, The Macon Telegraph, October 25, 2006.  I have no notes, transcript or recording.  Article supplied.

March – December 2006:  During my campaign for a seat on the Georgia Superior Court, I gave a number of talks at fundraisers and other campaign events to various groups at various places throughout Bibb, Crawford and Peach counties and in Atlanta.  I have no notes, transcript or recording.

e.  List all interviews you have given to newspapers, magazines or other publications, or radio or television stations, providing the dates of these interviews and four (4) copies of the clips or transcripts of these interviews where they are available to you.

Ryals D. Stone and Madeleine Simmons, *Meet Your New Appellate Judges and Justices*, Verdict, Spring 2017, pp. 14-18.  Copy supplied.

Amy Leigh Womack, *All I ever knew that daddy and granddaddy ever did was help people, new judge says. He wants to follow suit*, The Macon Telegraph, February 24, 2017.  Copy supplied.

Kathryn Hayes Tucker, *Third-Generation Judge and "One More Bow Tie" on the Court of Appeals*, The Fulton Daily Report, January 3, 2017.  Copy supplied.

Amy Leigh Womack, *Following the Law Not as Easy as it Sounds, Outgoing Judge Will Tell You*, The Macon Telegraph, December 23, 2016.  Copy supplied. The video portion of the interview is available at http://www.macon.com/news/local/article122706814.html.

Kathryn Hayes Tucker, *How Gov. Deal Reshaped the Judiciary in Georgia*, The Fulton Daily Report, December 22, 2016.  Copy supplied.

Maggie Lee, *Macon Judge Takes Oath of Office for Higher Court*, The Macon Telegraph, December 19, 2016.  Copy supplied.  The video portion of the interview can be viewed at: http://www.macon.com/news/local/article121791808.html.

Liz Fabian, *Teens Arrested in Theft of Judges' Vehicles*, The Macon Telegraph, November 30, 2016.  Copy supplied.

17

Liz Fabian, *While Bibb Judge Was Sleeping, Multiple Vehicles Were Stolen from His Driveway*, The Macon Telegraph, November 29, 2016. Copy supplied.

Laura Corley and Liz Fabian, *Four Vehicles Stolen from Two Judges*, The Macon Telegraph, November 29, 2016. Copy supplied.

Amy Leigh Womack, *Judge Tripp Self Appointed to the Court of Appeals*, The Macon Telegraph, November 9, 2016. Copy supplied.

Amy Leigh Womack, *Troubled Vets Find Helping Hand in Special Court*, The Macon Telegraph, November 4, 2016. Copy supplied.

Claire Davis, *Two Central Georgia Judges' Cars Stolen*, 13WMAZ, November 30, 2016. Copy supplied. The video portion of the interview is available at: http://www.13wmaz.com/news/local/two-central-ga-judges-cars-stolen/359594464.

Amy Leigh Womack, *Green Light Giveaways Will Help Salute Veterans*, The Macon Telegraph, October 21, 2016. Copy supplied.

Amy Leigh Womack, *New Penalties Spur Uptake in Bibb Juror Attendance*, The Macon Telegraph, May 10, 2015. Copy supplied.

Amy Leigh Womack, *Bibb County Institutes New Policy for Residents Who Skip out on Jury Duty*, The Macon Telegraph, March 14, 2015. Copy supplied.

Amy Leigh Womack, *New Bibb Jury Policy to be Set, Likely Patterned on Fulton County*, The Macon Telegraph, March 7, 2015. Copy supplied.

Amy Leigh Womack, *Bibb Murder Trial Postponed Due to "Lack of Juror Participation"*, The Macon Telegraph, February 24, 2015. Copy supplied.

Amy Leigh Womack, *Deputies Rounding up Missing Jurors*, The Macon Telegraph, February 23, 2015. Copy supplied.

Amy Leigh Womack, *Problem-Solving Court in Macon Judicial Circuit Links Troubled Veterans with VA Services*, The Macon Telegraph, November 9, 2014. Copy supplied.

Unattributed, *Speakers Lunch Series Explores Judge Self's Life as a Football Referee*, Georgia Defense Lawyer, Volume XI, Issue I, Spring 2014, p. 29. Copy supplied.

Amy Leigh Womack, *New Judge is a Woman of "High Character and Great Integrity"*, The Macon Telegraph, March 30, 2014. Copy supplied.

18

Amy Leigh Womack, *New Court Aims to Help Veterans*, The Macon Telegraph, October 28, 2013.  Copy supplied.

Michael Tierney, *Officiating in Court and On Field*, The Fulton Daily Report, October 18, 2013.  Copy supplied.

Kathleen Baydala Joyner, *"Start Afresh" on Nominees*, The Fulton Daily Report, August 24, 2012.  Copy supplied.

Amy Leigh Womack, *Retiring Macon Circuit Judge Ready to do "Human Things Again"*, The Macon Telegraph, December 26, 2011.  Copy supplied.

Amy Leigh Womack, *Jurors' Cell Phones Present New Challenge*, The Macon Telegraph, May 4, 2010.  Copy supplied.

Amy Leigh Womack, *Macon Attorney Buafo Dead at 48*, The Macon Telegraph, October 21, 2009.  Copy supplied.

Sarah I. Coole, Jennifer R. Mason and Johanna B. Merrill, *Georgia Lawyer Legacies*, Georgia Bar Journal, Vol. 13, No. 6, April 2008, pp. 39-41.  Copy supplied.

Jonathan J. Tuggle, *Q&A, Judge Tilman E. Self, Superior Court, Macon Judicial Circuit*, The Family Law Review, April 2008.  Copy supplied.

Charles E. Richardson, *A Good Man Gone*, The Macon Telegraph, March 2, 2008.  Copy supplied.

Travis Fain, *Airport Trying to Navigate Patch of Turbulence*, The Macon Telegraph, December 30, 2007.  Copy supplied.

Amy Leigh Womack, *Bibb Court Still Awaits Judge's Replacement*, The Macon Telegraph, December 2, 2007.  Copy supplied.

Amy Leigh Womack, *Culpepper Ready to Step Down as Superior Court Judge*, The Macon Telegraph, October 27, 2007.  Copy supplied.

Andy Peters, *On the Rise – 15 to Watch*, The Fulton Daily Report, August 27, 2007.  Copy supplied.

Travis Fain, Keith Whicker and Tim Sturrock, *The Ultimate Endorsement*, The Macon Telegraph, July 7, 2007.  Copy supplied.

Tim Sturrock, *Self Sworn in as Superior Court Judge*, The Macon Telegraph, January 3, 2007.  Copy supplied.

19

Tim Sturrock, *Self Defeats Ennis*, The Macon Telegraph, December 6, 2006. Copy supplied.

Editorial, *It's Election Day – Again*, The Macon Telegraph, December 5, 2006. Copy supplied.

Tim Sturrock, *Tuesday Runoff to Decide Superior Court Judgeship*, The Macon Telegraph, December 3, 2006. Copy supplied.

Tim Sturrock, *Ennis to Face Self in Superior Court Runoff*, The Macon Telegraph, November 9, 2006. Copy supplied.

Tim Sturrock, *Five Are Trying To Succeed Wilcox on Bibb County Bench*, The Macon Telegraph, October 28, 2006. Copy supplied.

Ayanna McPhail, *Candidates Make Their Pitch at Peach Forum*, The Macon Telegraph, October 25, 2006. Copy supplied.

I sat for a taping of *Close Up*, a TV show carried on WMAZ in Macon, Georgia. This taping occurred some time in October of 2006 and it included all candidates for the judicial seat that I was seeking. I do not have a copy of the show or a complete transcript, but I found a partial transcript. Partial transcript supplied.

Ed Grisamore, *Fried Green Tomato Sandwich Tradition*, The Macon Telegraph, July 17, 2006. Copy supplied.

Amanda Smith, *Tilman Self to Run for Superior Court Judge Seat*, Georgia Informer, April 5, 2006. Copy supplied.

Unattributed, *Self Announces Bid for Superior Court Judge*, The Macon Telegraph, January 28, 2006. Copy supplied.

Mike Donila, *Observers Say Simms' Action Not Unusual*, The Macon Telegraph, March 30, 2005. Copy supplied.

Nicholas Ledden, *Man to Settle Lawsuit in Dogs' Deaths*, The Macon Telegraph, January 12, 2005. Copy supplied.

Don Schanche, Jr, *Four Republicans Jockey for 8th District Seat*, The Macon Telegraph, July 13, 2004. Copy supplied.

Mike Donila, *Irked by Contract, Telecom Companies Moving On*, The Macon Telegraph, December 14, 2003. Copy supplied.

Richard Whitt, *Man to Keep Home for Now in Dog Dispute*, The Atlanta Journal-Constitution, December 13, 2003. Copy supplied.

20

Chris Hughes, *Officials' Call – There are Plenty of Games, but not Enough Referees*, The Macon Telegraph, July 28, 2002. Copy supplied.

Debbie Rhyne, *Union Acquitted on Sexual Assault Charge*, The Macon Telegraph, August 25, 2001. Copy supplied.

Debbie Rhyne, *Macon Restaurant Manager to Go on Trial on 1999 Rape Charge*, The Macon Telegraph, August 20, 2001. Copy supplied.

Andy M. Drury, *Macon Lawyer's Stature Growing in Community*, The Macon Telegraph, January 10, 2001. Copy supplied.

Drew Brown, *Veterans Remember a "Forgotten War"*, The Macon Telegraph, June 25, 2000. Copy supplied.

Joseph Person, *First Down and a Few Seasons – Central Fellowship Faces a Long Road in Football Revival*, The Macon Telegraph, May 28, 2000. Copy supplied.

13. **Judicial Office**: State (chronologically) any judicial offices you have held, including positions as an administrative law judge, whether such position was elected or appointed, and a description of the jurisdiction of each such court.

In 2006, I, and four other candidates, ran for an open seat on the Georgia Superior Court, Macon Judicial Circuit. I won a runoff election on December 5, 2006, to secure the seat and began service as a Superior Court Judge on January 1, 2007. In 2010 and 2014, I ran unopposed for the same seat.

The Superior Court is Georgia's general jurisdiction trial court and possesses exclusive jurisdiction over all felonies and death penalty cases, divorce and child custody cases, all equitable issues and adoptions. The Superior Court is not limited in the amount of monetary damages it can award.

On November 9, 2016, Governor Nathan Deal appointed me to serve on the Georgia Court of Appeals. I began serving on that court on January 1, 2017 and serve in that capacity today. The Georgia Court of Appeals is Georgia's intermediate appellate court, exercising statewide appellate jurisdiction over all cases except those involving constitutional questions, murder, election contests, habeas corpus, and cases where original appellate jurisdiction lies with the Supreme Court.

a. Approximately how many cases have you presided over that have gone to verdict or judgment:

During the 10 years, I sat on the Superior Court, I presided over 101 jury trials, of which five were divorce, 65 were criminal and 31 were civil. Additionally, I have

21

presided over hundreds of bench trials involving domestic, civil and criminal cases. I have also conducted literally thousands of hearings involving a wide array of issues including child support hearings, various criminal bond hearings, probation revocation hearings and all manner of civil and criminal motions.

      i. Of these, approximately what percent were:

| | |
|---|---|
| jury trials: | 15% |
| bench trials: | 85% |
| | |
| civil proceedings: | 35% |
| criminal proceedings: | 65% |

b. Provide citations for all opinions you have written, including concurrences and dissents.

<u>Opinions for the Georgia Court of Appeals</u>

*Bradley v. State,* No. A17A0668, --- S.E.2d ---, 2017 WL 3326749 (Ga. Ct. App. August 4, 2017).

*In Interest of C.W.,* No. A17A0732, --- S.E.2d ---, 2017 WL 3300633 (Ga. Ct. App. August 3, 2017).

*Worthen v. State,* No. A17A0949, --- S.E.2d ---, 2017 WL 3300624 (Ga. Ct. App. August 3, 2017).

*Reed v. State,* No. A17A0975, --- S.E.2d ---, 2017 WL 3274961 (Ga. Ct. App. August 2, 2017).

*Dialog E, LLC v. Select Mgmt. Res., LLC,* No. A17A0515 (Ga. Ct. App. June 22, 2017) (unpublished)

*Select Mgmt. Res., LLC v. Dialog E, LLC,* No. A17A0516 (Ga. Ct. App. June 22, 2017) (unpublished)

*Graybill v. Attaway Construction & Associates, LLC,* No. A17A0608, --- S.E.2d ---, 2017 WL 2628442 (Ga. Ct. App. June 19, 2017)

*Lynchar, Inc. v. Colonial Oil, Inc.,* No. A17A0391, --- S.E.2d ---, 2017 WL 2361144 (Ga. Ct. App. May 31, 2017)

*Hynes v. State,* 801 S.E.2d 306 (Ga. Ct. App. 2017)

*Redemption Alliance of Georgia, Inc. v. Lambros,* No. A17A0037 (Ga. Ct. App. May 31, 2017) (unpublished)

*Faruque v. Concept Software & Services, Inc.*, No. A17A0915 (Ga. Ct. App. May 31, 2017) (unpublished)

*Heller v. State*, No. A17A0192 (Ga. Ct. App. May 18, 2017) (unpublished)

*O'Dell Dev., LLC v. Ameris Bank*, No. A17A0076 (Ga. Ct. App. May 11, 2017) (unpublished)

*KP Dev., LLC v. Ameris Bank*, No. A17A0077 (Ga. Ct. App. May 11, 2017) (unpublished)

*Kingston Land & Dev., LLC v. Ameris Bank*, No. A17A0078 (Ga. Ct. App. May 11, 2017) (unpublished)

*Palmer v. Ameris Bank*, No. A17A0079 (Ga. Ct. App. May 11, 2017) (unpublished)

*Palmer v. Ameris Bank*, No. A17A0080 (Ga. Ct. App. May 11, 2017) (unpublished)

*Brown Station LLC v. Ameris Bank*, No. A17A0081 (Ga. Ct. App. May 11, 2017) (unpublished)

*Siegel v. Lamarca*, No. A17A0224 (Ga. Ct. App. May 11, 2017) (unpublished)

*Rothschild v. Southern Ass'n of Colls. & Schools Comm'n on Colls., Inc.*, No. A17A0338 (Ga. Ct. App. May 11, 2017) (unpublished)

*Brown v. Flagstar Bank*, No. A17A0442 (Ga. Ct. App. May 11, 2017) (unpublished)

*Dixon v. State*, 800 S.E.2d 11 (Ga. Ct. App. 2017)

*Vasile v. Addo,* 800 S.E.2d 1 (Ga. Ct. App. 2017)

*Premier Elevator Co., Inc. et.al. v. Michael Edwards*, 799 S.E.2d 588 (Ga. Ct. App. 2017)

*Solomon v. State*, No. A17A0001 (Ga. Ct. App. Apr. 13, 2017) (unpublished)

*Adams v. Tenet Health System GB, Inc.*, No. A170014 (Ga. Ct. App. Apr. 13, 2017) (unpublished)

*In re A.J.C.*, No. A17A0568 (Ga. Ct. App. Apr. 13, 2017) (unpublished)

*Ledford v. State*, 799 S.E.2d 359 (Ga. Ct. App. 2017)

*Russell v. Muscogee School District*, 800 S.E.2d 7 (Ga. Ct. App. 2017)

*Douglas County v. Hamilton State Bank*, 798 S.E.2d 509 (Ga. Ct. App. 2017)

*Clayton v. State*, 797 S.E.2d 639 (Ga. Ct. App. 2017) (Self, J., dissenting)

*In Interest of E.G.M., In Interest of I.L.M.*, 798 S.E.2d 639 (Ga. Ct. App. 2017)

*Henry v. Strategic Exchange, LLC*, 797 S.E.2d 672 (Ga. Ct. App. 2017)

*In the Interest of L.L.*, 798 S.E.2d 1 (Ga. Ct. App. 2017)

*Williams v. HSBC Mortgage Services, Inc.*, 796 S.E.2d 923 (Ga. Ct. App. 2017)

*Watkins v. State,* 797 S.E.2d 144 (Ga. Ct. App. 2017)

*Sherrer v. BP Prod. N. Am. Inc.*, No. A16A1551 (Ga. Ct. App. Feb. 16, 2017) (unpublished)

*Tinson v. Watson*, No. A16A1745 (Ga. Ct. App. Feb. 16, 2017) (unpublished)

*Pence v. Wells Fargo Bank*, No. A16A1786 (Ga. Ct. App. Feb. 1, 2017) (unpublished)

*Haas v. State*, No. A16A2149 (Ga. Ct. App. Feb. 1, 2017) (unpublished)

*Zinney v. Bodkin*, No. A16A1975 (Ga. Ct. App. Jan. 25, 2017) (unpublished)

*Cook v. Randolph County, Georgia*, No. A16A1510 (Ga. Ct. App. Jan. 20, 2017) (unpublished)

Opinions for the Georgia Superior Court

*Wilson v. Delgado*, Civil Action No. 14-V-0043 (Ga. Super. Ct. July 19, 2016) (Peach County, unpublished), *appeal pending* No. S17A0797 (Ga. Sup. Ct.)

*O'Neal v. Crawford County*, Civil Action No. 14-CV-173 (Ga. Super. Ct. Sept. 3, 2015) (Crawford County, unpublished)

*Browner v. State*, 11-CR-67278, 2014 WL 8396727 (Ga. Super. Ct., Bibb County Dec. 1, 2014)

*State v. Taylor*, No. 10-CR-66617, 2014 WL 5091751 (Ga. Super. Ct., Bibb County Mar. 14, 2014)

*State v. Taylor*, No. 10-CR-66617, 2012 WL 11906731 (Ga. Super. Ct., Bibb County Oct. 9, 2012)

*State v. Taylor*, No. 10-CR-66617, 2012 WL 11906732 (Ga. Super. Ct., Bibb County Mar. 2, 2012)

*Crisler v. Farr*, Civil Action No. 10-CV-17 (Ga. Super. Ct. Jan. 12, 2012) (Sumter County, unpublished)

*Erturk v. GEICO Gen. Ins. Co.*, No. 09-CV-52109, 2011 WL 11012536 (Ga. Super. Ct., Bibb County Jan. 7, 2011)

*Erturk v. GEICO Gen. Ins. Co.*, No. 09-CV-52109, 2010 WL 9938990 (Ga. Super. Ct., Bibb County Dec. 4, 2010)

*Erturk v. GEICO Gen. Ins. Co.,* No. 09-CV-52109, 2010 WL 9584877 (Ga. Super. Ct., Bibb County Jan. 17, 2010)

*State v. Willis*, No. 09-CR-65044, 2010 WL 9567372 (Ga. Super. Ct., Bibb County Apr. 29, 2010)

*Board of Regents of the University of Georgia v. Piedmont Const. Grp. LLC*, No. 07-CV-47696, 2008 WL 7907397 (Ga. Super. Ct., Bibb County Oct. 27, 2008)

*Bonbrake v. Reliford*, No. 06-CV-43783, 2007 WL 4138015 (Ga. Super. Ct., Bibb County Oct. 23, 2007)

*State v. Jolly*, No. 08-CR-63815A, 2009 WL 6608745 (Ga. Super. Ct., Bibb County Oct. 5, 2009)

*State v. Jolly*, No. 08-CR-63815A, 2009 WL 6608746 (Ga. Super. Ct., Bibb County Sep. 29, 2009)

*Board of Regents of the University System of Georgia v. Piedmont Const. Grp. LLC*, No. 07-CV-47696, 2009 WL 6594121 (Ga. Super. Ct., Bibb County Jan. 8, 2009)

*Bonbrake v. Reliford*, No. 06-CV-43783, 2007 WL 4138012 (Ga. Super. Ct., Bibb County Sep. 28, 2007)

*Bonbrake v. Reliford*, No. 06-CV-43783, 2007 WL 4138013 (Ga. Super. Ct., Bibb County Oct. 23, 2007)

*Bonbrake v. Reliford*, No. 06-CV-43783, 2007 WL 4138014 (Ga. Super. Ct., Bibb County Oct. 23, 2007)

*State v. Jolly*, No. 08-CR-63815A, 2009 WL 6608748 (Ga. Super. Ct., Bibb County Oct. 5, 2009)

*State v. Fair*, No. 08-CR-63815B, 2009 WL 6608749 (Ga. Super. Ct., Bibb County Aug. 31, 2009)

*State v. Fair*, No. 08-CR-63815B, 2009 WL 6608742 (Ga. Super. Ct., Bibb County Aug. 31, 2009)

*State v. Fair*, No. 08-CR-63815B, 2009 WL 6608743 (Ga. Super. Ct., Bibb County Aug. 31, 2009)

*State v. Fair*, No. 08-CR-63815B, 2009 WL 6608744 (Ga. Super. Ct., Bibb County Aug. 31, 2009)

*State v. Fair*, No. 08-CR-63815B, 2009 WL 6608745 (Ga. Super. Ct., Bibb County Aug. 31, 2009)

*State v. Fair*, No. 08-CR-63815B, 2009 WL 6608741 (Ga. Super. Ct., Bibb County Aug. 31, 2009)

*State v. Fair*, No. 08-CR-63815B, 2009 WL 6608740 (Ga. Super. Ct., Bibb County Aug. 15, 2009)

*Bd. of Regents of Univ. Sys. of Ga. v. Piedmont Const. Group, LLC*, No. 07-CV-47696, 2009 WL 6594121 (Ga. Super. Ct., Bibb County Jan. 8, 2009)

*Hadaway v. Schultz*, No. 07-CV-46353, 2007 WL 1511695 (Ga. Super. Ct., Bibb County Mar. 30, 2007)

   c. For each of the 10 most significant cases over which you presided, provide: (1) a capsule summary of the nature of the case; (2) the outcome of the case; (3) the name and contact information for counsel who had a significant role in the trial of the case; and (4) the citation of the case (if reported) or the docket number and a copy of the opinion or judgment (if not reported).

      1. *State v. Jolly*, Criminal Action No. 08-CR-63815, 2009 WL 6608746 (Ga. Super. Ct. Sept. 28, 2009), *aff'd in part, vacated in part, and rev'd in part sub nom. Fair v. State*, 702 S.E. 2d 420 (Ga. 2010).

In this death penalty case, I decided two issues of first impression: (1) finding no constitutional bar to the State seeking the death penalty against a defendant who unknowingly shot a law enforcement officer while performing his official duties; and (2) interpreting Georgia's statute providing immunity from prosecution while defending one's home to apply only when the intruder is present illegally. The Georgia Supreme Court affirmed both rulings by a 5-2 vote. *State v. Fair*, 702 S.E.2d 420 (Ga. 2010).

Counsel for the State:

26

Kimberly S. Schwartz
Chattahoochee Circuit District Attorney's Office
100 10th Street
Columbus, Georgia 31909
(706) 653-4336

Laura Murphree
Cobb County Superior Court Administration
30 Waddell Street
Marietta, Georgia 30090
(770) 528-1810

Counsel for Defendant Fair:

Brian Steel
Steel Law Firm
1800 Peachtree Street, Northwest
Suite 300
Atlanta, Georgia 30309
(404) 605-0023

Doug Ramseur
Capital Defender
The Lonsdale Building
207 Granby Street Suite 200
Norfolk, Virginia 23510
(757) 314-2354

Counsel for Defendant Jolly:

Jeffery L. Grube
115 Carl Vinson Parkway
Warner Robins, Georgia 31088
(478) 929-1775

James S. Stokes
Georgia Public Defender Council
Conflicts Division
104 Marietta Street, Suite 200
Atlanta, Georgia 30303
(404) 795-2440

2. *Board of Regents of the University of Georgia v. Piedmont Const. Grp. LLC*, No. 07-CV-47696, 2008 WL 7907397 (Ga. Super. Ct. Oct. 27, 2008) and *Board of Regents of the University System of Georgia v. Piedmont Const.*

27

*Grp. LLC*, No. 07-CV-47696, 2009 WL 6594121 (Ga. Super. Ct. Jan. 8, 2009), *aff'd in part and rev'd in part sub nom. Transp. Ins. Co. v. Piedmont Constr. Grp., LLC*, 686 S.E.2d 824 (Ga. Ct. App. 2009).

In this case, I answered a question of first impression regarding the interpretation of an exclusion in a commercial insurance policy. I ruled that the exclusion did not apply and also found the insurance company acted in bad faith by stubbornly refusing to defend and indemnify its client. On review, the Georgia Court of Appeals upheld all rulings, with the exception of my holding regarding an award of bad faith penalties. *Transp. Ins. Co. v. Piedmont Const. Grp., LLC*, 686 S.E.2d 824 (Ga. Ct. App. 2009).

Counsel for the Plaintiff:

Duke R. Groover
James Bates Brannan Groover, LLP
231 Riverside Drive
Macon, Georgia 31201
(478) 742-4280

Counsel for the Defendant:

Dennis Brown
Hanks Brookes, LLC
3500 Piedmont Road, Northeast
Suite 320
Atlanta, Georgia 30305
(404) 892-1991

3. *Wilson v. Delgado*, Civil Action No. 14-CV-0043 (Ga. Super. Ct. July 19, 2016), *appeal pending* No. S17A0797 (Ga. Sup. Ct.). Decision supplied.

In this contested divorce case, the couple had used *in vitro* fertilization to assist them in having a family. While the couple ultimately had twins, they also had three additional pre-embryos that were cryopreserved and available for future use. The couple could not agree as to their disposition and the fertility clinic did not require the parties to decide what would happen to the embryos in the event of a divorce. To further complicate matters, there is not a single statute or appellate case in Georgia on this issue of ever-increasing importance to so many Georgians. In deciding a question that had not yet been answered in Georgia, I began with an overview of case law from states that had considered the question. I ultimately laid a framework to analyze the question that weighed the competing interests of the parties' respective rights of procreation guaranteed under the Georgia and United States Constitutions. The case is currently on appeal to the Georgia Supreme Court.

28

Counsel for the Plaintiff:

Connie Williford
The Law Offices of Connie L. Williford
577 Mulberry Street, Suite 810
Macon, Georgia 31201
(478) 743-4069

Counsel for the Defendant:

Charles Jeffrey Liipfert
Culpepper & Liipfert
801 Anderson Avenue
Fort Valley, Georgia 31030
(478) 825-2074

4. *Erturk v. GEICO Gen. Ins. Co.*, No. 09-CV-52109, 2011 WL 11012536 (Ga.
   Super. Ct. Jan. 7, 2011), *aff'd*, 726 S.E.2d 757; *Erturk v. GEICO Gen. Ins.
   Co.*, No. 09-CV-52109, 2010 WL 9938990 (Ga. Super. Ct. Dec. 4, 2010);
   *Erturk v. GEICO Gen. Ins. Co.*, No. 09-CV-52109, 2010 WL 9584877 (Ga.
   Super. Ct. Jan. 17, 2010).

In this case, a driver was killed in an automobile accident with another car. The at-
fault driver had $100,000 of liability coverage and the decedent had previously
purchased $25,000 of underinsured motorist coverage. The executor settled the
wrongful death claim for $99,000 and the estate's claim for $1,000. The executor
then sought to recover $24,000 from the decedent's insurance company under the
underinsured motorist portion of his policy, alleging that the decedent was
"underinsured" so that he should be entitled to the underinsured motorist coverage
on his policy. As a question of first impression, I ruled that both the estate and the
wrongful death claims derived from the same person so that the underinsured
motorist coverage did not apply in this particular case. The court of appeals
affirmed the decision. *Erturk v. GEICO Gen. Ins. Co.*, 726 S.E.2d 757 (Ga. Ct.
App. 2012).

Counsel for the Plaintiff:

James Creasy
Gillis & Creasy LLC
2 Ravinia Drive Northeast, Suite 650
Atlanta, Georgia 30346
(770) 394-3127

Counsel for the Defendant:

Wallace Miller, III

29

Law Offices of Wallace Miller III, LLC
509 Forest Hill Road
Macon, Georgia 31210
(478) 474-4145

5. *Crisler v. Farr*, Civil Action No. 10-CV-17 (Ga. Super. Ct. Jan. 12, 2012). Decision supplied.

This legal malpractice case involved a lawyer who agreed to represent a client in a wrongful death case, although he rarely handled personal injury cases. Rather than file suit, the attorney engaged in an unexplainable scheme where he invented an answer, made up discovery supposedly from the defendants, fabricated letters to/from fictional opposing counsel and eventually "settled" the case for $2 million. The attorney then wrote a $1 million check from the firm's trust account to cover the first half of the "settlement," causing the firm to borrow $1 million from the attorney's father-in-law to cover the check. Eventually, the scheme unraveled and the father-in-law sued the clients to get his money back and ultimately won a $1.4 million judgment against them. In this suit, the former clients sued the lawyer that made up the entire scheme, the firm and the other partners to have them pay the judgment they now owe the father-in-law. In a detailed ruling, I denied the fabricating attorney's motion for summary judgment and required him to stand trial alone. I also granted summary judgment to the firm and the other partners finding that they neither knew of the scheme nor participated in it so that they should not be held liable. The parties settled the case while it was pending in the court of appeals.

Counsel for the Plaintiffs:

J. Edward Allen
Jeffrey DeLoach
Epps, Holloway, DeLoach & Hoipkemier, LLC
1220 Langford Drive
Building 200, Suite 101
Watkinsville, Georgia 30677
(706) 508-4000

F. Gregory Melton, Deceased

Counsel for the Defendant:

William D. Newcomb, III
Carlock, Copeland & Stair, LLP
191 Peachtree Street, Northeast
Suite 3600
Atlanta, Georgia 30303
(404) 522-8220

30

Peter Werdesheim
(formerly with Carlock, Copeland & Stair, LLP)
56 Perimeter Center E #450
Atlanta, Georgia 30346
(770) 804-1800

H. Lane Young, II
Hawkins Parnell Thackston & Young LLP
303 Peachtree Street, Northeast
Suite 4000
Atlanta, Georgia 30308
(404) 614-7400

Elizabeth K. McGrath O'Neill
Marta Law Department
2424 Piedmont Road Northeast, 6th Floor
Atlanta, Georgia 30324
(404) 848-5220

6. *State of Georgia* ex. rel. *Cooke, v. Sudama Resorts, LLC*, Civil Action No. 15-CV-63661 (Ga. Super. Ct.).

This case involves civil RICO claims brought by the district attorney against 159 individual defendants alleging violations of Georgia's commercial gambling statutes. The defendants are master license holders and retail licensees of alleged coin operated amusement machines. This case is the largest RICO case brought in the Macon Judicial Circuit and is one of the largest ever brought in Georgia. The allegations include that the defendants jointly received more than $100 million on which they paid no sales or use taxes. I did not issue any substantive decision on the merits of this case, and it was still pending when I left the superior court bench.

Counsel for the State:

Michael G. Lambros
Special Assistant District Attorney
1355 Peachtree Street, Suite 1280
Atlanta, Georgia 30309
(404) 221-1000

K. David Cooke, Jr.
District Attorney
Macon Judicial Circuit
Second Floor, Grand Building
661 Mulberry Street
Macon, Georgia 31201
(478) 621-6427

31

Counsel for the Defendants:

Edward T.M. Garland
Garland, Samuel & Loeb
3151 Maple Drive, Northeast
Atlanta, Georgia 30305
(404) 975-0459

Paul Oeland
(formerly with LaMalva Geoffrey & Oeland, P.C.)
919 Center Street
Conyers, Georgia 30012
(770) 483-6557

Beau Worthington
Law Offices of Coxen & Worthington, LLC
5109 Highway 278, Northeast, Suite B
Covington, Georgia 30014
(770) 784-7660

7.  *State v. Allen*, No. 11-CR-042 (Ga. Super. Ct.).

I presided over this criminal case where the State accused the defendant of committing the crime of aggravated assault over alleged gang turf. While the trial only lasted three days, it was made immensely more difficult because I had to sequester the jury after the defendant had attempted to bribe a juror in a previously scheduled trial. After the jury ultimately acquitted the defendant of the underlying aggravated assault, he immediately pled guilty to embracery and received the maximum sentence.

Counsel for the State:

T. Clifton Woody, II
Houston County District Attorney's Office
201 Perry Parkway
Perry, Georgia 31069
(478) 218-4810

Counsel for the Defendant:

Vincent Hill
Vincent Hill, PC
118 East Trinity Place
Decatur, Georgia 30030
(404) 479-4400

32

8. *Martinez v. Martinez,* No. 06-CV-046233 (Ga. Super. Ct. Oct. 19, 2011). Decision supplied.

To date, this is the largest divorce case ever tried to a Bibb County jury. One of the issues that made the case more difficult was the extensive pre-trial discovery issues concerning financial records held by banks in Madrid. Moreover, we had several disputes between the court interpreters and the parties, who both spoke Spanish as their first language. In the end, the jury awarded the plaintiff approximately $11 million, in real estate, cash, and periodic alimony. After the trial, I granted the defendant a new trial after I concluded that the plaintiff had lied about several assets she held in Spain, thus depriving the jury of its exclusive right under Georgia law to divide the marital assets.

Counsel for the Plaintiff:

Kice H. Stone
Stone & Driggers, LLC
701 Nottingham Drive
Macon, Georgia 31201
(478) 741-0060

Counsel for the Defendant:

The Honorable Philip T. Raymond, III
(formerly with Shaffer, Raymond & Dalton)
601 Mulberry Street, Room 314
Macon, Georgia 31201
(478) 621-6620

9. *O'Neal v. Crawford County,* Civil Action No. 14-CV-173 (Ga. Super. Ct. Sept. 3, 2015), *rev'd in part,* 792 S.E.2d 498 (Ga. Ct. App. 2016). Decision supplied.

I presided over this mandamus action filed by the elected county coroner against the county commission. The coroner alleged that the county was required by statute to provide him with certain amenities such as a nicer office, better car, and monthly stipends. The suit was a result of a long-standing feud between these elected officials. Ultimately, I granted the county's motion for summary judgment and invited the county to file a motion for attorneys' fees based in accordance with Georgia's frivolous litigation statute. The county did so, and I ultimately ordered the coroner and his attorney to reimburse the county approximately $107,000 for filing a frivolous suit. The coroner appealed. In a case of first impression, the court of appeals disallowed a portion of the awarded fees. *O'Neal v. Crawford County,* 792 S.E.2d 498 (Ga. Ct. App. 2016). The court of appeals affirmed all other aspects of the order.

33

Counsel for the Plaintiff:

Bonnie Michelle Smith
Michelle Smith, Attorney at Law
4501 Russell Parkway, Suite 26
Warner Robins, Georgia 31088
(478) 953-3661

Counsel for the Defendant:

Duke R. Groover
James Bates Brannan Groover, LLP
231 Riverside Drive
Macon, Georgia 31201
(478) 742-4280

10. *State v. Eason*, No. 15-CR-107 (Ga. Super. Ct.).

This murder trial was the last case I presided over while on the superior court bench. The State charged six defendants with the death of an eight-year-old child. Tragically, the defendants routinely sold marijuana in the local neighborhood. The defendants got into a disagreement over credit terms and payment for the drugs and four of them went to the other defendant's apartment to "send a message." At approximately 2 a.m., they opened fire on the door, striking two children and killing an eight-year-old boy. The State charged all with felony murder and three were jointly tried together. The jury convicted them on all counts, and I sentenced them to life without parole. Their cases are pending on appeal.

Counsel for the State:

Cynthia T. Adams
205 West Church Street
Fort Valley, Georgia 31030
(478) 825-8454

Elizabeth Bobbitt
205 West Church Street
Fort Valley, Georgia 31030
(478) 825-8454

Counsel for Defendant Sams:

Debra Gomez
Gomez Law Group
1469 Oglethorpe Street

Macon, Georgia 31201
(478) 744-0905

Counsel for Defendant Wipfel:

Andrew Foster
Carter & Foster LLC
820 Orange Terrace
Macon, Georgia 31201
(478) 742-1971

Counsel for Defendant Eason:

Brian Tevis
Tevis Law Firm LLC
101 Marietta Street, NW
Suite 3325
Atlanta, Georgia 30303
(404) 907-2527

Counsel for Defendant Garvin:

Laura D. Hogue
Hogue & Hogue LLP
341 3rd Street
Macon, Georgia 31201
(478) 750-8040

Counsel for Defendant Jackson:

Melvin Raines II
5448 Stone Cove Drive, Southwest
Atlanta, Georgia 30331
(404) 450-8067

d. For each of the 10 most significant opinions you have written, provide: (1) citations for those decisions that were published; (2) a copy of those decisions that were not published; and (3) the names and contact information for the attorneys who played a significant role in the case.

   1. *Henry v. Strategic Exchange, LLC*, 797 S.E.2d 672 (Ga. Ct. App. 2017).

   Counsel for the Appellant:

   Jeffrey D. Horst
   Krevolin & Horst, LLC

35

One Atlantic Center, Suite 3250
1201 West Peachtree Street, Northwest
Atlanta, Georgia  30309
(404) 888-9700

Counsel for the Appellee:

Grady A. Roberts, III
Roberts Law LLC
Hurt Building
50 Hurt Plaza, Suite 1500-08
Atlanta, Georgia 30303
(404) 794-7000

2. *Williams v. HSBC Mortgage Services, Inc.,* 796 S.E.2d 923 (Ga. Ct. App. 2017).

Counsel for the Appellant:

Joann Brown-Williams
Meriwether & Tharp, LLC
11475 Great Oaks Way, Suite 125
Alpharetta, Georgia 30022
(678) 879-9000

Counsel for the Appellee:

Louis G. Fiorilla
Burr & Forman
171 17th Street, Northwest, Suite 1100
Atlanta, Georgia 30363
(404) 815-3000

3. *Douglas County v. Hamilton State Bank*, 798 S.E.2d 509 (Ga. Ct. App. 2017).

Counsel for the Appellant:

T. Bart Gary
Michael M. Hill
Freeman Mathis & Gary, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30309
(770) 818-0000

Kenneth Ray Bernard, Jr.
Sherrod & Bernard, P.C.

36

8470 Price Avenue
Douglasville, Georgia 30133
(770) 920-8350

Counsel for the Appellee:

Curtis James Romig
Bryan Cave
One Atlantic Center, 14th Floor
1201 West Peachtree Street, Northwest
Atlanta, Georgia
(404) 572-6600

4. *In Interest of L.L.*, 798 S.E.2d 1 (Ga. Ct. App. 2017).

Counsel for the Appellant:

Kosha S. Tucker
Stone Mountain Circuit Public Defender's Office
4309 Memorial Drive
Decatur, Georgia 30032
(404) 294-2763

Counsel for the Appellee:

Donna Coleman-Stribling
DeKalb County Solicitor-General
(formerly with Johnson, Coleman and Stephenson, LLC)
556 North McDonough Street, Suite 500
Decatur, Georgia 30030
(404) 371-2201

5. *Watkins v. State,* 797 S.E.2d 144 (Ga. Ct. App. 2017).

Counsel for the Appellant:

Mitchell D. Durham
301 Washington Ave
Marietta, Georgia 30060
(770) 427-0743

Counsel for the Appellee:

Michael S. Carlson
Deputy Chief Assistant District Attorney
Cobb County District Attorney's Office

70 Haynes Street
Marietta, Georgia 30090
(770) 528-3080

6. *In Interest of E.G.M.*, 798 S.E.2d 639 (Ga. Ct. App. 2017).

Counsel for the Appellant:

C. Mark Anderson
The Law Office of C. Mark Anderson, P.C.
185 West Main Street
Canton, Georgia 30114
(678) 496-3981

Cory DeBord
Carver & DeBord P.C.
360 West Main Street
Canton, Georgia 30114
(678) 439-1082

Counsel for the Appellee:

Calandra A. Harps
Assistant Attorney General
Georgia Office of the Attorney General
40 Capitol Square
Atlanta, Georgia 30334
(404) 656-3300

7. *Vasile v. Addo,* 800 S.E.2d 1 (Ga. Ct. App. 2017).

Counsel for the Appellant:

Scott Stevens
Howe & Associates, P.C.
Suite 100
4385 Kimball Bridge Road
Alpharetta, Georgia 30022
(678) 566-6800

Counsel for the Appellee:

Paul Andrew
Andrew, Merritt, Reilly & Smith, LLP
7 Lumpkin Street
Lawrenceville, Georgia 30045

(770) 513-1200

8. *Ledford v. State*, 799 S.E.2d 359 (Ga. Ct. App. 2017).

Counsel for the Appellant:

Eric Ballinger
151 West Main Street
Canton, Georgia 30114
(770) 479-2020

Counsel for the Appellee:

Jessica Moss
Cherokee County Solicitor's Office
90 North Street
Canton, Georgia 30114
(678) 493-6360

Carlton Hayes
Cherokee County Solicitor's Office
1590 Adamson Parkway, Fourth Floor
Morrow, Georgia 31062
(678) 493-6360

9. *Dixon v. State*, 800 S.E.2d 11 (Ga. Ct. App. 2017).

Counsel for the Appellant:

Richard Murray
200-A West Gordon St.
Dalton, Georgia 30720

Counsel for the Appellee:

Herbert Franklin, Jr.
Lookout Mountain Circuit District Attorney
114 East Patton Street
LaFayette, Georgia 30728

10. *Hynes v. State*, 801 S.E.2d 306 (Ga. Ct. App. 2017).

Counsel for the Appellant:

Erin H. Gerzenstag
Erin H. Gerzenstag, LLC

675 Ponce de Leon Avenue
Suite 8500
Atlanta, Georgia 30308
(404) 771-6675

Counsel for the Appellee:

Carlton Hayes
Prosecuting Attorney's Council of Georgia
1590 Adamson Parkway
Fourth Floor
Morrow, Georgia 30260
(404) 969-4036

e.  Provide a list of all cases in which certiorari was requested or granted.

*Ledford v. Sellers,* No. S17W1622, --- S.E.2d. --- (Ga. May 16, 2017) (Self, J.,
sitting by designation), *cert. denied* 581 U.S. ---, No. 16-9177 (May 16, 2017).

f.  Provide a brief summary of and citations for all of your opinions where your
decisions were reversed by a reviewing court or where your judgment was
affirmed with significant criticism of your substantive or procedural rulings.  If
any of the opinions listed were not officially reported, provide copies of the
opinions.

*State v. Jolly,* No. 08-CR-63815, 2009 WL 6608746 (Ga. Super. Ct. Sept. 28,
2009), *aff'd in part, vacated in part, and rev'd in part sub nom. Fair v. State,* 702
S.E.2d 420 (Ga. 2014).  This death penalty case involved the shooting of a
deputy sheriff during the service of a no-knock search warrant.  Because the
State sought the death penalty, it had to prove that the defendants knew or should
have known that they shot a police officer engaged in official duties.  Several
disputes arose as to the burden of proof required by the State as to that point.  I
ultimately ruled that the best way to handle this situation was to send the jury a
special interrogatory directly asking them if the defendants knew or should have
known they had killed a police officer, if they recommended any sentence other
than life with the possibility of parole.  In a case of first impression, the Georgia
Supreme Court ruled that a defendant may receive the death penalty if he killed a
police officer engaging in his official duties, even if he did not know that the
victim was a police officer.  Thus, the Supreme Court obviated any need for
interrogatories and reversed that portion of the order as unnecessary.

*Board of Regents of the University System of Georgia v. Piedmont Const. Grp.
LLC,* No. 07-CV-47696, 2009 WL 6594121 (Ga. Super. Ct. Jan. 8, 2009), *aff'd
in part and rev'd in part sub nom. Transp. Ins. Co. v. Piedmont Constr. Grp.,
LLC,* 686 S.E.2d 824 (Ga. Ct. App. 2009).  In this case, I ruled that the insurance
company had improperly refused to defend and indemnify its client, a

40

construction company. As a result, I found the insurer liable for penalties, attorneys' fees, and costs because it had acted in bad faith towards its client. I calculated the amount of the fees and penalties. Although the construction company did not object at the time, on appeal, it agreed with the insurance company that a jury, not the court, must decide the specific amount of the fees and penalties. Thus, the court of appeals reversed on that single issue. The court of appeals also *sua sponte* imposed the maximum penalties on the appellant and its counsel for filing a frivolous appeal.

*O'Neal v. Crawford County*, Civil Action No. 14-CV-173 (Ga. Super. Ct. Sept. 3, 2015), *rev'd in part*, 792 S.E.2d 498 (Ga. Ct. App. 2016). In this case, I granted summary judgment in favor of the county against the elected coroner of the county on his frivolous claims for additional cars, money and offices. I invited the county to file a motion for attorneys' fees under Georgia's frivolous litigation statute. I awarded more than $107,000 in fees and expenses to the county. The court of appeals ruled that the statute in question limited the county's recovery and it reduced the award by approximately $36,000. Decision supplied.

*Estate of Crook v. Foster*, Civil Action No. 11-V-356 (Ga. Super. Ct. Oct. 17 2014), *rev'd*, 775 S.E.2d 286 (Ga. Ct. App. 2015). Crook and Foster lived together for 8 years, although they never married. Crook bought a house and put Foster's name on the deed with her. Ultimately, the parties broke up and Crook later died, giving Foster full title via the survivorship deed. Crook's children sued on behalf of her estate, arguing that Foster was unjustly enriched when he got the house without paying for it. The jury agreed and awarded the estate $30,000. I granted a judgment notwithstanding the verdict and alternatively, a new trial, ruling that the house transferred as a matter of law due to Crook's actions. The court of appeals reversed, finding that genuine issues of material fact were present as to whether or not there had been a valid gift. The court of appeals reinstated the jury verdict. Decision supplied.

*Davis v. Batchelor*, Civil Action No. 07-V-0711 (Ga. Super. Ct. Nov. 12, 2008), *aff'd in part and rev'd in part*, 686 S.E.2d 314 (Ga. Ct. App. 2009). In this section 1983 case, the plaintiff sued a deputy sheriff for striking him with his car, which caused injuries to plaintiff's foot. I granted summary judgment in favor of the sheriff, holding that the plaintiff had assumed the risk of being injured when he ran from the police. The court of appeals disagreed and ruled that there was a question of fact as to whether the plaintiff had knowledge of the specific and particular risk of being hit by a car being driven by a trained police officer. The court affirmed in all other respects. Decision supplied.

*State v. Windhom*, Criminal Action No. 09-CR-123 (Ga. Super. Ct. Aug. 5, 2011), *rev'd*, 729 S.E.2d 25 (Ga. Ct. App. 2012). The State indicted and tried the defendant for the offense of armed robbery. During the trial, the lead detective in the case testified that the victim had told him that she thought that the

41

defendant and others acted in concert to rob her store. The defendant objected to that testimony on the grounds that it was hearsay and that it also improperly bolstered the victim's credibility. I allowed the testimony under an exception to the rule against hearsay. The court of appeals noted the exception that I ruled under, but held that it did not apply to that certain set of facts and ordered that the defendant be retried. Decision supplied.

*Peach County Bd. of Comm'rs v. Harris*, Civil Action No. 08-V-0031 (Ga. Super. Ct. Feb. 15, 2008), *rev'd*, 674 S.E.2d 36 (Ga. Ct. App. 2009). The plaintiff worked as a custodian in the Peach County courthouse. In the course of her job, she bent over and a pill fell out of her pocket. As she leaned back down in order to pick up the pill, she dislocated her knee. The administrative law judge and the workers compensation board found the injury to be compensable and awarded benefits. I disagreed and ruled that her picking up the pill was purely personal to her and was non-compensable. The court of appeals reversed and found that her job was to pick things up, even things personal to her. Thus, they allowed benefits to stand. Decision supplied.

*State v. Dean*, Case No. 09-CR-65071 (Ga. Super. Ct. Mar. 21, 2011), *rev'd*, 722 S.E.2d 436 (Ga. Ct. App. 2012). The Court of Appeals reversed the defendant's conviction for aggravated battery because it determined that I had given an improper jury instruction. Specifically, the State requested that I give a charge on certain criminal statutes involving a domestic dispute. The court ruled that I should not have given the requested charge and remanded for a new trial. Decision supplied.

*Mulligan v. Selective HR Solutions, Inc.*, Civil Action No. 08-CV-49934 (Ga. Super. Ct. Jan. 9, 2009), *rev'd*, 699 S.E.2d 119 (Ga. Ct. App. 2011). In this case, I was called on to interpret a rule of the workers compensation board. I noted in my order that neither party had argued that the rule was unconstitutional or improper. On appeal, the court of appeals found the rule to be unenforceable because it effectively shifted the burden of proof in contravention of the workers compensation statute. Thus, because I interpreted a rule that was invalid, the court held that my order was contrary to law and it reversed. The losing party appealed to the Georgia Supreme Court, which affirmed the court of appeals. *Mulligan v. Selective HR Solutions, Inc.*, 716 S.E.2d 150 (Ga. 2011). Decision supplied.

g. Provide a description of the number and percentage of your decisions in which you issued an unpublished opinion and the manner in which those unpublished opinions are filed and/or stored.

While a judge on the Court of Appeals of Georgia, I have authored 48 opinions of which 28 (58%) have been unpublished. In every instance where I have issued an unpublished opinion, the decision to do so was in accordance with court rules and agreed upon by the two other judges on the panel.

42

Unpublished opinions of the Court of Appeals of Georgia are filed and/or stored on our internal case management docket system and are searchable and accessible to court staff or judges as needed for research purposes. In the case of all unpublished opinions, the opinions are sent to the attorneys representing the parties and to the lower court judge whose decision was reviewed. Upon request, any opinion is available to the public through the clerk's office.

While a superior court judge, I wrote thousands of orders that were not published in official reporters. All written orders are available to the public in the Georgia Superior Court Clerk's Offices of the counties within the Macon Judicial Circuit.

h.  Provide citations for significant opinions on federal or state constitutional issues, together with the citation to appellate court rulings on such opinions. If any of the opinions listed were not officially reported, provide copies of the opinions.

While a judge for the Court of Appeals of Georgia, I have authored no significant opinions on federal or state constitutional issues due to the limited constitutional appellate jurisdiction of the court on which I serve. The Supreme Court of Georgia has exclusive appellate jurisdiction in all cases involving the construction of the Constitution of the State of Georgia or of the United States Constitution and in all cases in which the constitutionality of a law, ordinance, or constitutional provision is in question.

During the ten years that I served as a superior court judge, I presided over and issued decisions on federal or state constitutional issues in the following cases:

*Wilson v. Delgado*, Civil Action No. 14-V-0043 (Ga. Super. Ct. July 19, 2016), *appeal pending* No. S17A0797 (Ga. Sup. Ct.). Decision previously supplied in response to Question 13(c).

*State v. Jolly*, No. 08-CR-63815, 2009 WL 6608746 (Ga. Super. Ct. Sep. 29, 2009).

i.  Provide citations to all cases in which you sat by designation on a federal court of appeals, including a brief summary of any opinions you authored, whether majority, dissenting, or concurring, and any dissenting opinions you joined.

I have not sat by designation on a federal court of appeals.

14. **Recusal**:  If you are or have been a judge, identify the basis by which you have assessed the necessity or propriety of recusal (If your court employs an "automatic" recusal system by which you may be recused without your knowledge, please include a general description of that system.)  Provide a list of any cases, motions or matters that have come before you in which a litigant or party has requested that you recuse yourself

43

due to an asserted conflict of interest or in which you have recused yourself *sua sponte*. Identify each such case, and for each provide the following information:

  a. whether your recusal was requested by a motion or other suggestion by a litigant or a party to the proceeding or by any other person or interested party; or if you recused yourself sua sponte;

  b. a brief description of the asserted conflict of interest or other ground for recusal;

  c. the procedure you followed in determining whether or not to recuse yourself;

  d. your reason for recusing or declining to recuse yourself, including any action taken to remove the real, apparent or asserted conflict of interest or to cure any other ground for recusal.

In my former capacity as a superior court judge, I did not maintain, nor was I expected to maintain, a standing recusal list. During the ten years I served, I was assigned several thousand cases for disposition. I am aware of only one case where a party formally moved for me to recuse. The case was *Davis v. Walton*, Civil Action Number 13-CV-017 (Ga. Super. Ct., Peach County). The defendant requested that I recuse myself because I had heard several of his criminal cases and was therefore disqualified from hearing his civil case. I denied his motion for recusal because under Georgia law, it failed to satisfy the legal requirements for recusal.

I do not recall any other case where a party moved to recuse me. However, I did voluntarily recuse *sua sponte* on occasions where I may have known a party or recusal was necessary to otherwise avoid an appearance of impropriety. My judicial circuit did not employ an automatic recusal system.

While serving on the superior court, I evaluated the necessity or propriety of recusal pursuant to the provisions of Canons 3 (E) and (F) of the Georgia Code of Judicial Conduct and also considered the provisions of Canon 2, which require judges to avoid impropriety and the appearance of impropriety. I also assessed recusal motions pursuant to the provisions of Rule 25 of the Uniform Rules of Superior Court, which contains affidavit and time limitation requirements for litigants seeking recusal.

While a judge on the Court of Appeals of Georgia, I have never been requested to recuse myself from a case for any reason. Our court recently instituted a system where each individual judge now has the ability to maintain his or her own conflicts list. Using this system, I have recused myself from any case involving: any judge of any class of court in the Macon Judicial Circuit; my legal mentor, John A. Draughon, Sr.; and a very close friend who also serves in the Georgia General Assembly, Senator John F. Kennedy. I have also recused from any case involving my former law firm, Sell & Melton, LLP.

44

I would voluntarily recuse from a case if required after consulting the necessity or propriety of recusal pursuant to the provisions of Canons 3 (E) and (F) of the Georgia Code of Judicial Conduct and also considering the provisions of Canon 2 of the Code of Judicial Conduct, which require judges to avoid the appearance of impropriety. In addition, I follow the Court of Appeals Protocol on Disqualification and Recusal of Judges as contained in the Court's Internal Operations Manual (Appendix XXXIII). Utilizing the system and criteria I described above, I have recused from the following Georgia Court of Appeals cases:

*Stallings v. State*, No. A17A1116 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit.

*Browning v. Rabun County Board of Commissioners*, No. A17A1136 (Ga. Ct. App.). I recused because a close personal friend represented one of the parties in this case.

*Brown v. Ward*, No. A17I0158 (Ga. Ct. App.). I recused because this application for an interlocutory appeal involved a case that was decided by a judge from my former circuit.

*Alwawi v. Ward*, No. A17I0161 (Ga. Ct. App.). I recused because this application for an interlocutory appeal involved a case that was decided by a judge from my former circuit.

*Southern Health Partners, Inc. v. Ward*, No. A17I0162 (Ga. Ct. App.). I recused because this application for an interlocutory appeal involved a case that was decided by a judge from my former circuit.

*Garrett v. Hutchinson*, No. A17A1172 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit.

*Georgia Dep't. of Transp. v. Roberson*, No. A17A0974 (Ga. Ct. App.). I recused because I had independent knowledge about this case.

*Brinson v. Brookefield Macon Homeowners Association, Inc.*, No. A17A1285 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit.

*Ray v. State*, No. A17A1306 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit.

*Boyd v. State*, No. A17A1480 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit.

*Mercer University v. Stofer*, No. A17A1515 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit.

45

*Sabino v. Sabino*, No. A17A1523 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit and because I had previously decided a motion for partial summary judgment in the case.

*Haywood v. State*, No. A17A1538 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit.

*Smith v. Christian*, No. A17AD0407 (Ga. Ct. App.). I recused because this application for discretionary appeal involves a case that was decided by a judge from my former circuit and because the defendant is the former chief judge of my circuit.

*Runyon v. State*, No. A17A1563 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit.

*Houston Hospital v. Soley*, No. A17A1092 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit.

*Ga. Dep't. of Transp. v. King*, No. A17A2132 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit.

*Kendall v. State*, No. A17D0406 (Ga. Ct. App.). I recused because this application for a discretionary appeal involves a case decided by a judge from my former circuit.

*Barnes v. Harkins*, No. A17A1643 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit.

*Kendall v. State*, No. A17D0435 (Ga. Ct. App.). I recused because this application for a discretionary appeal involves a case decided by a judge from my former circuit.

*James v. James*, No. A17D0447 (Ga. Ct. App.). I recused because this application for a discretionary appeal involves a case decided by a judge from my former circuit.

*Thomas v. State*, No. A17A1698 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit.

*Cancel v. The Medical Ctr., of Central, Ga., Inc.*, No. A17A1709 (Ga. Ct. App.). I recused because this case was decided by a judge from my former circuit.

15. **Public Office, Political Activities and Affiliations**:

a. List chronologically any public offices you have held, other than judicial offices, including the terms of service and whether such positions were elected or appointed. If appointed, please include the name of the individual who appointed you. Also, state chronologically any unsuccessful nominations for appointed office.

46

Commissioner (2016 – 2017) Judicial Qualifications Commission; appointed by the Georgia Supreme Court

Commissioner (2010 – 2013), Georgia Commission on Family Violence; appointed by Governor Sonny Perdue

Member (2004 – 2007), Georgia Sports Hall of Fame; appointed by Governor Sonny Perdue

b. List all memberships and offices held in and services rendered, whether compensated or not, to any political party or election committee. If you have ever held a position or played a role in a political campaign, identify the particulars of the campaign, including the candidate, dates of the campaign, your title and responsibilities.

In 2006, I was directly involved in my own political campaign for a seat on the Georgia Superior Court.

In 2002, I served as the Bibb County chairman for Governor Sonny Perdue's gubernatorial campaign. I was not paid and I was generally responsible for assisting the candidate in Bibb County and with communicating with his campaign staff.

In 1998, I was an alternate delegate to the Georgia Republican Party Convention held in Augusta, Georgia. I also served as General Counsel to the Bibb County Republican party between 1998 and 2002. I provided assistance with resolutions and gave general legal advice. I was not paid.

16. **Legal Career**: Answer each part separately.

   a. Describe chronologically your law practice and legal experience after graduation from law school including:

      i. whether you served as a clerk to a judge, and if so, the name of the judge, the court and the dates of the period you were a clerk;

         I have not served as a clerk to a judge.

      ii. whether you practiced alone, and if so, the addresses and dates;

         I have not practiced alone.

      iii. the dates, names and addresses of law firms or offices, companies or governmental agencies with which you have been affiliated, and the nature of your affiliation with each.

47

1997 – 2006
Sell & Melton, LLP
577 Mulberry Street, Suite 1400
Macon, Georgia 31201
Summer associate (May – August 1995, May – August 1996)
Associate (1997 – 2002)
Partner (2002 – 2006)

iv.  whether you served as a mediator or arbitrator in alternative dispute resolution proceedings and, if so, a description of the 10 most significant matters with which you were involved in that capacity.

I have not served as a mediator or arbitrator in alternative dispute resolution proceedings.

b.  Describe:

i.  the general character of your law practice and indicate by date when its character has changed over the years.

While in private practice at Sell & Melton, I described myself as the firm's "utility infielder." I generally found my way to the cases that no one knew much about or that no one really want to be involved with. This allowed me to try cases in superior court, federal court, probate court, and magistrate courts and occasionally to appear in the state and federal appellate courts. I primarily represented small businesses, many of which were in the construction industry. A typical day for me could involve real estate closings, will contests, a deposition, and legal research for a pending summary judgment motion.

ii.  your typical clients and the areas at each period of your legal career, if any, in which you have specialized.

While at Sell & Melton, I primarily focused my practice on litigation, typically representing individuals and small business owners in a wide array of cases. I often assisted a partner in my firm in representing the Georgia Department of Transportation in condemnation cases and the local hospital authority in general litigation matters. I did not have a stable of large corporate clients. Additionally, I also helped clients with criminal matters, estate matters such as the drafting of their wills, basic estate planning and the creation of simple trusts. I often advised my corporate clients on issues such as the creation of business entities, general employment advice, and basic corporate transactions, such as the purchase of other companies and the buying and selling of real estate.

48

c. Describe the percentage of your practice that has been in litigation and whether you appeared in court frequently, occasionally, or not at all. If the frequency of your appearances in court varied, describe such variance, providing dates.

During my time in private practice, I was engaged in general trial practice that routinely involved litigation and included regular and frequent court appearances. Approximately 85% of my practice during this time involved litigation.

    i. Indicate the percentage of your practice in:
        1. federal courts:         10%
        2. state courts of record:     88%
        3. other courts:         0%
        4. administrative agencies:   2%

    ii. Indicate the percentage of your practice in:
        1. civil proceedings:      90%
        2. criminal proceedings:    10%

d. State the number of cases in courts of record, including cases before administrative law judges, you tried to verdict, judgment or final decision (rather than settled), indicating whether you were sole counsel, chief counsel, or associate counsel.

I tried nine cases to verdict. I was lead counsel on four of the cases and associate counsel on five of the cases.

    i. What percentage of these trials were:

        1. jury:         89%
        2. non-jury:      11%

e. Describe your practice, if any, before the Supreme Court of the United States. Supply four (4) copies of any briefs, amicus or otherwise, and, if applicable, any oral argument transcripts before the Supreme Court in connection with your practice.

I have not practiced before the Supreme Court of the United States.

17. **Litigation**: Describe the ten (10) most significant litigated matters which you personally handled, whether or not you were the attorney of record. Give the citations, if the cases were reported, and the docket number and date if unreported. Give a capsule summary of the substance of each case. Identify the party or parties whom you represented; describe in detail the nature of your participation in the litigation and the final disposition of the case. Also state as to each case:

a. the date of representation;

49

b.  the name of the court and the name of the judge or judges before whom the case was litigated; and

c.  the individual name, addresses, and telephone numbers of co-counsel and of principal counsel for each of the other parties.

1.  *Gardner v. Vincent*, 03-CV-37954F and *King v. Vincent*, 03-CV-37955F (Ga. Super. Ct.).  Georgia Superior Court; Honorable Hugh Wingfield; December 2003 – March 2004.

    In these cases, I represented the defendant, who had limited mental capacity. Notwithstanding his mental limitations, he still lived alone, making money repairing old TVs and electronics and picking up aluminum cans.  The plaintiffs accused the defendant of taking the batteries out of their respective dogs' electronic collars, allowing the dogs to escape their yard, drink antifreeze and die.  One plaintiff obtained an arrest warrant for the defendant's arrest, and served him with the civil lawsuits while the defendant was in jail.  The defendant did not understand the legal papers, failed to file an answer and then lapsed into default.  Although the plaintiff knew of the defendant's mental infirmities, he failed to inform the court when he asked for the default judgments.  The plaintiffs obtained judgments against the defendant for a total of $185,000, which included punitive damages.  Next, the plaintiffs moved to foreclose the judgment lien against the house that the defendant had inherited from his parents.  Thankfully, members of plaintiff's church got involved and asked me to help.  After a 12-hour hearing, I was able to convince the court to set aside the judgment, and the court ultimately appointed me to serve as the defendant's guardian ad litem.  On the eve of trial, we settled the matter for a small sum, preserving a home for the defendant.

    Co-Counsel:
    The Honorable David L. Mincey, III
    (formerly with Mincey & Mincey, LLC)
    601 Mulberry Street, Suite 310
    Macon, Georgia 31201
    (478) 621-6620

    Counsel for the Plaintiff:
    Jerry A. Lumley
    Lumley & Harper, LLC
    6030 Lakeside Commons Drive
    Macon, Georgia 31210
    (478) 471-1776

2.  *Southern Wood Suppliers, Inc. v. Diversified Engineering and Manufacturing Company, Inc.*, Civil Action No. 5:02-cv-00376-WDO (M.D. Ga.).  United States District Court for the Middle District of Georgia; Honorable Wilbur D. Owens, Jr. (deceased); approximately March 2004 – March 2005.

I represented a sawmill owned by three brothers in this engineering malpractice action against the defendant. After the brothers paid the defendant a significant amount of money to add on to their sawmill in rural Georgia, the mill only worked at 24% capacity. In addition to this federal action, the defendant sued our clients in state court for refusing to pay for a nonfunctioning mill. After a significant amount of discovery, we were able to mediate the case to a successful global resolution of all disputes between the companies.

Co-Counsel:
Michael P. Dickey
Barron & Redding, P.A.
220 McKenzie Avenue
Panama City, Florida 32401
(850) 785-7454

Counsel for the Defendant:
Barry Brock
(formerly with Walston Wells, LLP)
2829 2nd Avenue South
Suite 282
Birmingham, Alabama 35233
(205) 745-3060

3. *Baillie Lumber Co. v. Thompson Hardwood Flooring, Inc.*, Civil Action No. 51195 (Ga. Super. Ct.). Georgia Superior Court for Bibb County; Honorable William P. Adams; approximately January 2002 – April 2005.

In this case, I was the primary attorney representing the plaintiff, a New York based company that supplied raw hardwoods to a local sawmill. The owner of the sawmill had engaged in a pattern of fraudulently misrepresenting the amount of inventory for the mill to his lenders. Because he was using the mill to finance another project, he had ceased paying his debts, including $254,000 he owed to my client. In order to avoid paying his debts, the plaintiff's primary lender ultimately filed an involuntary Chapter 7 bankruptcy case, and he resigned from the corporation's board and as an officer. My client alleged that it could collect debts from him personally under an alter ego action. In other words, we alleged that any creditor could file an action against a corporation's principal if the principal had disregarded the corporate formalities. I had researched the law in other states and was convinced that this could be a viable theory in Georgia, although there was no case on point. Ultimately, the Georgia Supreme Court ruled in favor of our client and held for the first time that a corporation could file an alter ego action against its own principal. *Baillie Lumber Co. v. Thompson*, 612 S.E.2d 296 (Ga. 2005).

Co-Counsel:
Ed S. Sell, III
Sell & Melton, LLP

51

577 Mulberry Street, Suite 1400
Macon, Georgia 31201
(478) 746-8521

Counsel for the Defendant:
Hu C. Lovein
Jones Cork & Miller, LLP
435 Second Street, Suite 500
Macon, Georgia 31201
(478) 745-2821

4.  *In re Icarus Holdings, LLC*, Bankruptcy No.: 01-55662 (JDW), Adversary
    Proceeding Nos. 02-5081 and 02-5069 (Bankr. M.D. Ga.).  United States
    Bankruptcy Court for the Middle District of Georgia; Honorable James D. Walker;
    approximately 2002 – 2005.

    This is the companion bankruptcy case to the *Baillie Lumber* case referenced above.
    As mentioned, the corporation filed for Chapter 7 bankruptcy protection.  The
    bankruptcy trustee ultimately sold all of the assets of the debtor to a new entity.
    The resulting entity, which held only debt, was renamed Icarus Holdings, LLC.
    The entity that purchased all of the debtor's assets had also entered into a complete
    and general release with Icarus Holdings.  My client, Baillie Lumber Company, had
    directly sued the debtor's principal for its debt under the alter ego theory described
    above.  Icarus took the position that it was the only entity that could file any such
    alter ego claim against the bankrupt corporation's principal.  The bankruptcy court
    predicted that such a claim was viable under Georgia law; however, the court also
    found that even if it were available, such a claim belonged to the estate and could
    not be asserted by a creditor unless the claim had been abandoned.  *In re Icarus
    Holdings, LLC*, 290 B.R. 171 (Bankr. M.D. Ga. 2002).  We appealed to the district
    court, which, in an unpublished opinion, affirmed the ruling of the bankruptcy
    court.  My client appealed to the United States Court of Appeals for the Eleventh
    Circuit.  That court then certified two questions to the Georgia Supreme Court.
    Specifically, the Eleventh Circuit asked the Georgia Supreme Court if a corporation
    could pierce its own veil against its principal and if so, for how much.  *In Re Icarus
    Holdings, LLC*, 391 F.3d 1315 (11th Cir. 2004).  After the Georgia Supreme Court
    answered the questions, *Baillie Lumber Co. v. Thompson*, 612 S.E. 2d 296 (Ga.
    2005), the Eleventh Circuit eventually affirmed the district court, holding that any
    alter ego claim belonged to the estate unless the estate had properly abandoned
    them.  *In re Icarus Holdings, LLC*, 413 F.3d 1293 (11th Cir. 2005).  After receiving
    this decision, my client dismissed its case.

    Co-Counsel:
    Ed S. Sell, III
    Sell & Melton, LLP
    577 Mulberry Street, Suite 1400
    Macon, Georgia 31201

52

(478) 746-8521

Counsel for the Defendant:
Sean A. Kulka
Arnall Golden & Gregory
171 17th Street, Northwest, Suite 2100
Atlanta, Georgia 30363
(404) 873-8500

5.  *Williams v. Williams*, Civil Action No. 03-CV-23098 (Ga. Super. Ct.).  Georgia
    Superior Court for Bibb County; Honorable Tommy Day Wilcox; approximately
    May 2002 – March 2003.

    I represented the defendants in this case.  One of the defendants was a local
    entrepreneur that owned a convenience store.  He decided to help his son open his
    own store and agreed to mentor him and provide some financing.  However, the son
    ultimately stole several thousand dollars from his father.  When the father
    confronted his son, the son denied doing so and refused to make any amends at all.
    Instead, the son sued his father and his father's convenience store.  The father then
    counterclaimed against his son for negligence and theft.  The son filed a motion to
    dismiss, in which we ultimately prevailed and the case proceeded to trial.  Rather
    than go to a public trial, I suggested binding arbitration.  After two days of
    arbitration, we settled the case.

    Co-Counsel:
    Honorable David L. Mincey, III
    (formerly with Mincey & Mincey, LLP)
    601 Mulberry Street, Suite 310
    Macon, Georgia 31201
    (478) 621-6620

    Counsel for the Defendant:
    Walter J. Lane, Jr., Deceased

6.  *Sharpe v. Dep't of Transp.*, 505 S.E.2d 473 (Ga. 1998).  Georgia Supreme Court;
    Honorable Leah Ward Sears, Honorable Norman Fletcher, Honorable Hugh
    Thompson, Honorable George Carley, Honorable Carol Hunstein, Honorable
    Robert Benham, and Honorable P. Harris Hines; 1997 – 1998.

    I represented the Georgia Department of Transportation in this appeal of a jury
    verdict in a condemnation case.  Before I was admitted to the bar, the case was tried
    before a jury, and the jury made its award to the condemnees.  Our client appealed,
    alleging that the court had unduly emphasized a portion of the opposing expert's
    testimony in response to a jury question.  The Georgia Supreme Court allowed the
    verdict to stand.  The case ultimately served to clarify exactly what was required of
    litigants to properly preserve an objection.

53

Co-Counsel:
John A. Draughon, Sr.
Cooper, Draughon & Cooper, LLP
(formerly with Sell & Melton, LLP)
502 Mulberry Street, 2nd Floor
Macon, Georgia 31201
(478) 202-7050

Counsel for the Appellant:
Tom W. Daniel, Deceased

7. *Bibb County, Georgia v. Georgia Power Co.*, Civil Action No. 96-CV-10241 (Ga. Super. Ct.). Georgia Superior Court for Bibb County; Honorable S. Philip Brown; 1997 – 1999.

This case involved a multimillion dollar suit over a power company's obligation to move its power poles from the county right of way when a county expands its roads. This was a case of first impression and would ultimately set significant precedent. I began work on this case as a summer associate and then completed work after I passed the bar. I conducted significant research on similar issues from all over the country and served to prepare our lead counsel for the many hearings. The court of appeals allowed the case to proceed to trial, which lead to an eventual mediation and settlement. *Bibb County v. Georgia Power Co.*, 525 S.E.2d 136 (Ga. Ct. App. 1999).

Lead Counsel:
John D. Comer
(formerly with Sell & Melton, LLP)
577 Mulberry Street, Suite 1400
Macon, Georgia 31201
(478) 746-8521

Counsel for the Defendant:
H. Jerome Strickland
Jones Cork & Miller
435 Second Street, Suite 500
Macon, Georgia 31201
(478) 745-2821

8. *Anderson v. Smith & Sons Food, Inc.*, Civil Action No. 3:03-cv-00014 (E.D. Tenn.). United States District Court for the Eastern District of Tennessee; Honorable Thomas W. Phillips; approximately March 2003 – June 2004.

One of my small-business clients was sued for alleged violations of the Americans with Disabilities Act by a group dedicated to helping the disabled community.

54

After receiving the complaint, I contacted the client and suggested a very different approach. Specifically, I advised the client to authorize me to contact the opposing party, thank them for their interest and let them know that we understood the importance of the disabled community to his business. To that end, I proposed that he invite the plaintiffs' attorney and expert to the restaurant and ask them to give us a more thorough inspection to ensure that we fully complied with both the intent and the spirit of the Act. The strategy worked out extraordinarily well for our client. In addition to complying with the Act, we greatly reduced our costs, only paying the plaintiffs approximately $8,500 in attorneys' fees. Further, rather than get stuck in protracted and costly litigation, we saved our client significant attorneys' fees and bad publicity.

Co-Counsel:
Ed S. Sell, III
Sell & Melton, LLP
577 Mulberry Street, Suite 1400
Macon, Georgia 31201
(478) 746-8521

Julia H. Magda
(formerly with Sell & Melton, LLP)
Magda Law, LLC
830 Mulberry Street, Suite 203
Macon, Georgia 31201
(478) 812-8060

Counsel for the Plaintiff:
Gene R. Zweben
Zweben Law Group
(formerly with Schwartz, Zweben & Singbaum)
532 Colorado Avenue
Stuart, Florida 34994
(772) 223-5454

9. *Rice v. Redding*, Civil Action No. 04-CV-24083 (Ga. Super. Ct.); Georgia Superior Court for Bibb County; Honorable Lamar W. Sizemore, Jr.; approximately 2004 – 2005.

I represented the plaintiffs in this case, who were the surviving heirs of their aunt. After the plaintiffs' uncle died, the defendant moved in and convinced the widowed aunt to leave him her marital home in her will. However, our legal investigation revealed that at the time of her death, the aunt actually owned only a portion of her home due to an issue with some of the previous deeds. We eventually tried the case to a jury, who awarded my clients a collective 7/8ths interest in the home and imposed a constructive trust in favor of my clients over the defendant's 1/8th interest.

55

Co-Counsel:
Hon. David L. Mincey, III
(formerly with Mincey & Mincey, LLP)
601 Mulberry Street, Suite 310
Macon, Georgia 31201
(478) 621-6620

Counsel for the Defendant:
Walter J. Lane, Jr., Deceased

10. *Fountain v. Mims*, Civil Action No. 3:00-cv-00005-DHB (S.D. Ga.); United States
    District Court for the Southern District of Georgia; Honorable Dudley H. Bowen;
    approximately 1999 – 2001.

    In this section 1983 case, I represented the Georgia Department of Corrections
    against the plaintiff's allegations of reverse discrimination. Specifically, the
    plaintiff, who was Caucasian, alleged that he had been wrongly fired by the
    department and treated differently than similarly situated African-Americans. I
    drafted and filed the department's motion for summary judgment. The district court
    granted the motion.

    Co-Counsel:
    John A. Draughon, Sr.
    Cooper, Draughon & Cooper, LLP
    (formerly with Sell & Melton, LLP)
    502 Mulberry Street, 2nd Floor
    Macon, Georgia 31201
    (478) 202-7050

    Counsel for Defendant:
    G. Sam Burnette
    147 Wakefield Drive
    Macon, Georgia 31220
    (478) 743-4300

18. **Legal Activities**: Describe the most significant legal activities you have pursued,
    including significant litigation which did not progress to trial or legal matters that did
    not involve litigation. Describe fully the nature of your participation in these activities.
    List any client(s) or organization(s) for whom you performed lobbying activities and
    describe the lobbying activities you performed on behalf of such client(s) or
    organizations(s). (Note: As to any facts requested in this question, please omit any
    information protected by the attorney-client privilege.)

    Because of my military service overseas, I have a unique understanding of the stress and
    strain that foreign deployments take on veterans and their families. Given that so many of

56

our veterans are returning from Iraq and Afghanistan after multiple deployments with both emotional and physical injuries and issues, I recognized the need for a court specifically designed to focus on and address the distinctive needs of this most valuable segment of our society. To that end, I initiated and spearheaded the community effort that culminated in the Macon Judicial Circuit Veteran's Court that began operating in April of 2014.

Without a doubt, the creation of this court is the best thing that I did while on the superior court bench. Lives have been literally saved, reclaimed and transformed through this veteran's court due to the selfless work and devotion of the staff, volunteers and the participants. This program has also saved the county thousands of dollars in reduced incarceration costs because the clients are finally addressing the underlying issue(s) (emotional, mental, substance abuse or some combination of these) that in the past could have led to involvement with the criminal justice system.

19. **Teaching**: What courses have you taught? For each course, state the title, the institution at which you taught the course, the years in which you taught the course, and describe briefly the subject matter of the course and the major topics taught. If you have a syllabus of each course, provide four (4) copies to the committee.

I have not taught a course.

20. **Deferred Income/Future Benefits**: List the sources, amounts and dates of all anticipated receipts from deferred income arrangements, stock, options, uncompleted contracts and other future benefits which you expect to derive from previous business relationships, professional services, firm memberships, former employers, clients or customers. Describe the arrangements you have made to be compensated in the future for any financial or business interest.

None.

21. **Outside Commitments During Court Service**: Do you have any plans, commitments, or agreements to pursue outside employment, with or without compensation, during your service with the court? If so, explain.

I plan to continue officiating college football. However, if it is determined that continued officiating would violate the United States Judges' Code of Conduct, I would resign from the football officiating staff of the Southern Conference.

22. **Sources of Income**: List sources and amounts of all income received during the calendar year preceding your nomination and for the current calendar year, including all salaries, fees, dividends, interest, gifts, rents, royalties, licensing fees, honoraria, and other items exceeding $500 or more (if you prefer to do so, copies of the financial disclosure report, required by the Ethics in Government Act of 1978, may be substituted here).

See attached Financial Disclosure Report.

57

23. **Statement of Net Worth**:  Please complete the attached financial net worth statement in detail (add schedules as called for).

See attached Net Worth Statement.

24. **Potential Conflicts of Interest**:

    a.  Identify the family members or other persons, parties, categories of litigation, and financial arrangements that are likely to present potential conflicts-of-interest when you first assume the position to which you have been nominated.  Explain how you would address any such conflict if it were to arise.

    If confirmed, I would recuse from any matter in which I had familiarity from my service on the Court of Appeals of Georgia and the Georgia Superior Court.  I would continue to recuse from any matter involving the attorneys and firms identified on my conflicts list at the court of appeals.  Otherwise, I am aware of no such conflicts of interest.  Should an actual or potential conflict arise, or a situation that could give the appearance of a conflict, I would consult all applicable statutes, rules, policies, procedures, case authority, and the Code of Conduct for United States Judges and act accordingly.

    b.  Explain how you will resolve any potential conflict of interest, including the procedure you will follow in determining these areas of concern.

    If confirmed, I will abide by the Code of Conduct for United States Judges and all applicable statutes, rules, practices, policies, procedures, and case authority related to avoiding or resolving actual or potential conflicts of interest, erring, as I have since I began serving as a judge, on the side of recusal to avoid any appearance of impropriety.

25. **Pro Bono Work**:  An ethical consideration under Canon 2 of the American Bar Association's Code of Professional Responsibility calls for "every lawyer, regardless of professional prominence or professional workload, to find some time to participate in serving the disadvantaged."  Describe what you have done to fulfill these responsibilities, listing specific instances and the amount of time devoted to each.

The Georgia Code of Judicial Conduct and Georgia law prohibits state court judges from giving legal advice or otherwise practicing law.  As a result, for the last nearly 11 years, I have not been permitted to represent clients pro bono or otherwise.  While in private practice, I often handled cases pro bono for those who could not afford legal services.  Specifically, I advised people in writing their wills and assisted them in housing situations.  I often represented churches and nonprofit organizations in real estate transactions at no cost.  Throughout my private practice, I represented individuals charged with various felonies who could not afford to hire a lawyer.

26. **Selection Process**:

a. Please describe your experience in the entire judicial selection process, from beginning to end (including the circumstances which led to your nomination and the interviews in which you participated). Is there a selection commission in your jurisdiction to recommend candidates for nomination to the federal courts? If so, please include that process in your description, as well as whether the commission recommended your nomination. List the dates of all interviews or communications you had with the White House staff or the Justice Department regarding this nomination. Do not include any contacts with Federal Bureau of Investigation personnel concerning your nomination.

In December 2016, the State Bar of Georgia posted the notice of a judicial vacancy on its website. I submitted an application on January 11, 2017. On March 15, 2017, the Federal Judicial Appointment Screening Committee appointed by Senators Johnny Isakson and David Perdue interviewed me at the Federal Courthouse in Macon, Georgia.

Since March 29, 2017, I have been in contact with officials in the White House Counsel's Office. On April 5, 2017, I interviewed with attorneys from the White House Counsel's Office and from the Office of Legal Policy at the Department of Justice. On April 11, 2017, I received separate calls from Senator Johnny Isakson and Senator David Perdue informing me that the President was considering my nomination. On July 13, the President submitted my nomination to the Senate.

b. Has anyone involved in the process of selecting you as a judicial nominee discussed with you any currently pending or specific case, legal issue or question in a manner that could reasonably be interpreted as seeking any express or implied assurances concerning your position on such case, issue, or question? If so, explain fully.

No.

59